Elizabeth W. Miller, Executrix of the last will of Elizabeth W. Miller, Deceased, *v.* James H. Billington, Appellant.

*Contract—Trade-mark—Royalties—Interests—Rests.*

Where an agreement to pay royalties on a trade-mark provides that quarterly statements shall be rendered and royalties paid in ten days thereafter, and it appears that no statements have been rendered, a master in stating an account may allow rests at every quarter, and compute interest on the amounts then due.

*Contract—Patented article—Interest—Partnership.*

Where a person who is already engaged in manufacturing covenants to manufacture an article registered as a trade-mark, at his sole cost and charge, and after deducting the actual cost of manufacture to pay over to the owner of the trade-mark one half of the net profits, the phrase, "the actual cost of manufacture" means simply the actual cash paid out for material and for wages of employees exclusively engaged in the manufacture of the article, and does not include other expenses which were incident to the manufacturer's general business; and he will, therefore, not be allowed to charge interest on his capital invested, nor rent for his own building used in the business.

Argued Jan. 11, 1900. Appeal, No. 284, Jan. T., 1899, by defendant, from decree of C. P. No. 2, Phila. Co., Sept. T., 1891, No. 728, dismissing exceptions to master's report. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for an account.

This case was in this Court before, and is reported in 184 Pa. 583.

After the record was remitted to the court below the matter was referred to J. Edward Carpenter, who reported as follows:

In arriving at a proper statement of the account between the parties to this proceeding, it is necessary to refer to the agreements under which the defendant is liable to account to the plaintiff.

The first, dated March 31, 1883, between Mrs. Elizabeth W. Miller and Daniel T. Gage, contains the covenants, which the defendant, Billington, assumed by his agreement with the said Gage, dated May 8, 1890, which agreement was ratified and confirmed by Elizabeth W. Miller, the plaintiff, who was joined by her husband, William Hartley Miller in the execution of a formal agreement, dated May 9, 1890, in which she, with the concurrence of her husband, ratified and confirmed the assignment and agreement between Gage and Billington, and agreed to hold the said Billington, after June 1, 1890, solely and wholly responsible for the covenants and agreements, and in the faithful performance thereof imposed on the said Gage by the agreement between the said Gage and Mrs. Miller of March 31, 1883. The covenants thus assumed by the defendant are in the following language :

" I covenant and agree to manufacture, or have manufactured at my sole cost, charge and expense, the packing for stuffing boxes, etc., shown, described and claimed in the certificate of registration above named, and to use due and proper business diligence and exertions to sell the same and to pay to the said Elizabeth W. Miller, as a royalty for the use of the said trademark, and as consideration for the assignment thereof to me, one-half the net profits or proceeds from the sale thereof, said net profits to be estimated by deducting the actual cost of manufacture of the same, plus seven and one half per centum of the selling price from the selling price thereof or amount received therefor. I further covenant and agree to keep just, true and lawful accounts in my regular books of account of all of the said packing manufactured and sold by me, and of the expenses of such manufacture, and of the prices at which the same may be sold by me, to which accounts the said Elizabeth W. Miller, or her duly authorized representative, shall at all reasonable times have free access. I further agree to render quarterly statements in writing of said accounts to the said Elizabeth W. Miller, and within ten days after rendering said accounts to pay to the said Elizabeth W. Miller the royalty or half net profits as aforesaid."

It was contended on the part of the defendant that certain statements which were rendered by Gage to the plaintiff, showing the profits to be divided between Gage and Miller, are to be considered as a construction put upon the contract by the parties themselves, and that the rule that where the contract is ambiguous the construction put upon it by the parties must prevail, applies in this case. But these statements were the statements of Gage, the predecessor of the defendant, Billington, in the contract, and there is no evidence to show that the defendant ever saw them, or knew of them, until they were offered in evidence in this case by the plaintiff for another purpose. There can, therefore, be no privity between the plaintiff and the defendant so far as these statements made by Gage to the plaintiff are concerned, and the rule cannot apply. There are, beside, serious doubts whether Gage's statements would have been available for this purpose between himself and the plaintiff. It was not shown that the plaintiff, a woman, had ever had an opportunity of ascertaining their correctness by examination of the books or otherwise, but, on the contrary, it was developed by the testimony that Gage had included in some, at least, of these statements, under the head of the cost price of articles to be used in the manufacture of the packing, a profit to himself; that is, he purchased the material to be used, added a profit to himself, and then charged the whole as the actual cost of material in his statement. This amounted to fraud upon the part of Gage, and throws discredit upon his statements. Nor can the contract be said to be ambiguous. The language of the covenants is plain and not capable of misconstruction. The agreement itself must, therefore, be consulted in construing the contract between the parties. The agreement provided that the defendant shall "render quarterly statements to the said Elizabeth W. Miller, and within ten days after rendering said accounts, to pay to the said Elizabeth W. Miller the royalty or half net profits as aforesaid." This the defendant has failed to do. The plaintiff was entitled to the share of her profits at these dates. The master, therefore, in stating the account, allows rests at every quarter, and interest on the amounts found to be due to the plaintiff for her share of the profits from the dates of each quarter.

The agreement provides that the defendant shall manufac-

ture or cause to be manufactured, "at his sole cost, charge and expense," the packing, and "shall pay the plaintiff as a royalty and as consideration, one-half of the net profits or proceeds from such sale, said net profits or proceeds to be estimated by deducting the actual cost of manufacturing of the packing aforesaid, plus seven and one half per centum of the selling price thereof, or amount received therefor."

The language here is that the defendant shall manufacture the packing at his sole cost and expense, and that the profit shall be found by deducting the actual cost of manufacture. In the absence of any special provision for charging interest on capital. employed by the defendant, or for charging rent, the master holds that the allowance of these items in the account of the defendant, must be governed by the general rule which is laid down by McPherson, J., and affirmed by the Supreme Court in Ahl v. Ahl, 186 Pa. 99, in the following language: "The general rule is well settled, that a partner is not entitled to claim interest upon money advanced for partnership purposes, unless otherwise agreed," citing Holden v. Peace, 45 Am. Dec. 518, "and it is merely extending the principle, to deny a partner rent for his real estate used for partnership purposes, unless he can prove an agreement that rent is to be allowed." The Pennsylvania rule concerning the allowance of interest is found in Gyger's Appeal, 62 Pa. 73. "The allowance or refusal of interest depends upon the circumstance of each particular case."

It must be borne in mind that this is not the case of the settlement of an intricate account in the winding up of a partnership, where the parties could not have avoided the necessity of litigation, or at least of calling in friends to arbitrate, as was the case in Gyger's Appeal, but here the defendant denied the plaintiff's title, refused to account, and when called to account by the plaintiff, in plain disregard of his covenant, he discontinued the manufacture of the globe packing, and used his efforts to substitute another packing in its place, he is, therefore, entitled to no favors from a court of equity, and cannot now complain if he is held to a rigid and strict accountability. The master, therefore, disallows any items of charges for interest on capital in the defendant's account.

In the matter of rent, the master finds that certain sums of

money were actually paid for rent of a building which, for a time, was used for the manufacture of the packing; these items the master allows as having been actually paid out, and as a portion of the actual cost; but the master, under the authority of Ahl v. Ahl, disallows all charges of rent made by the defendant for the use of his own premises or any part thereof.

The master construes the meaning of the words employed in the agreement, " I covenant and agree to manufacture or have manufactured at my sole cost, charge and expense, the packing," etc., in connection with the words, "said net profits to be estimated by deducting the actual cost of manufacture of the same," etc., to be that the actual cash paid out by him for material, and for wages of employees exclusively engaged in the manufacture of the article, shall be allowed, but that no charges for wages for bookkeeping, office work and other matters, which the defendant already employed or had in his general business, nor for the use of an elevator, nor for machinery, which were improvements for the benefit of his business in general, and his property, and not exclusively for the purpose of manufacturing this packing, should be allowed. The master construes the agreement to mean that all these items and others of a similar character, are a part of the defendant's agreement to manufacture at his sole cost, charge and expense. Nor are any items of cost of selling, such as commissions, to be allowed as the actual cost of manufacture; such items are provided for, and all costs of sale in the proviso in the agreement which reserves to the defendant after deducting the actual cost of manufacture, seven and one half per centum of the selling price. This seven and one half per centum was evidently to cover the cost of selling, and as the defendant was equally interested in the profit, it was the contemplated profit which was intended to be the defendant's compensation for the use of his general facilities in conducting the business. In support of his contention that all of these items should be allowed in the settlement of his account, the defendant relied upon several cases cited by him as authority, principally in the United States courts, but these cases are for infringement of patents, where the measure of damage to the plaintiff was the profit made by the infringer. In these cases the infringer was allowed to offset in his account against the money received by reason of the infringement, items

of expense and charge, including many of a character similar to those excluded by the master in the present case. But in those cases there were no contracts between the parties; no commissions allowed; no covenant to manufacture at the sole cost, charge and expense of the defendant; no covenant to sell, and no agreement as to how the profits were to be estimated. In those cases the only question to be decided was the profit which had come into the infringer's possession by reason of the infringement. They do not apply to this case.

It appeared from the evidence that at the time of the change of the business from Gage to the defendant, there were in the hands of the defendant, turned over to him from Gage, manufactured packing in stock and materials for manufacturing the packing of the value of $986.58. It does not appear whether any portion or all of the cost of this had in the time of Gage been charged against the plaintiff; but as the plaintiff produced no proof that it had been so charged against her already, the master finds that it was not charged against her, and allows the said sum as a credit in the defendant's account.

In stating the account between the parties an apparent loss is shown at the close of the quarter's account for several quarters. This is not real, but apparent. It arises from the purchase of a larger quantity of material in the quarter than was necessary for the packing manufactured. The contract does not provide that the plaintiff shall share in any losses, but, on the contrary, that the defendant shall manufacture at his sole cost, charge and expense; but in this instance the loss shown is not a real loss, and as the material, the purchase of which showed the apparent loss, was on hand and used in the manufacture of the packing in a subsequent quarter, the master allows the sums so stated as losses to be carried forward to the statement of the next subsequent quarter's accounts as credits to the defendant.

It was developed by the proofs that a discrepancy existed between the amounts of packing manufactured and the amount sold, as shown by the wages paid, which at so much per pound showed the manufacture of so many pounds of packing, while the actual number of pounds sold showed that 22,017 pounds of packing had not been accounted for. This discrepancy, the defendant claimed, was accounted for partly as having been the

result of shrinkage in weight, and that the remainder had been given away in samples and for the purposes of advertising. The master allows a shrinkage of one per cent. But there was no clause in the agreement which permitted the disposal of any of the packing for advertising, nor can the cost of such packing be deducted from the amounts of cash received, in making up the account as cost of manufacture, for its cost has already been charged. The master, therefore, charges the defendant with:

| | |
|---|---:|
| The packing not accounted for, which the master finds is . . . . . | 22,017 lbs. |
| Less an estimated amount for shrinkage, one per cent on total amount of packing 172,459 pounds . . . | 1,725 lbs. |
| | 20,292 lbs. |
| With which the master charges the defendant at 48½ cents per pound, that being the average selling price . . . . . . | $9,841 62 |
| From which there must be deducted 7½ per cent . . . . . . . | 738 12 |
| | $9,103 50 |
| One half of which amount . . . . | $4,551 75 |
| Is payable by the defendant to the plaintiff with interest from November 1, 1894, the average date between February, 1892, and July 1, 1897, to March 1, 1899 . . . . | 1,183 45 |
| | $5,735 20 |

Sundry charges for drayage and hauling were claimed by the defendant. The master allows all payments which were made for express charges, drayage or hauling, on materials purchased by the defendant; but the master disallows all charges made by the defendant for expressage, drayage or hauling not actually paid for by him for materials purchased, such other hauling and drayage being a portion of the facilities of his own general business, and principally used in this connection, with the sending out of the packing for sale, and therefore not a part of the cost of the manufacture, but of selling the product.

The master finds that the defendant purchased for the pur-

pose of manufacturing globe packing certain machinery, including a fourteen-horse power engine, at a cost of about $500. (The master is unable to fix the exact cost, because of the incomplete character of the defendant's statement of account, which in many instances gives the names of persons to whom payments were made without stating for what purpose the payments were made.) This machinery, which was erected on the defendant's property, still remains there, and, although it was purchased primarily with a view to the manufacturing of the packing, the master finds that it is used by the defendant for the purpose of furnishing steam heat to other portions of the building, running an elevator, etc. Testimony was introduced by the defendant to show that the value of this machinery after its use was not more than $175. The master allows the cost of the machinery so purchased as a credit to the defendant, estimated at $500, less the value to the defendant of the same, $175, $325.

The statement of the account between the parties produced by the plaintiff's counsel and made from the figures produced by the defendant, properly divided in quarterly rests, is in proper form, and, as restated by the master with the modifications set forth in this report, is correct.

The master on exceptions appended a statement of account showing an indebtedness by the defendant to the plaintiff of $20,175.49. The court dismissed exceptions to the master's report and entered a decree that the defendant, James H. Billington, do forthwith pay to the plaintiff, Elizabeth W. Miller, executrix of Elizabeth W. Miller, deceased, the sum of $20,175.49, with interest thereon from March 1, 1899.

*Errors assigned* were in dismissing exceptions to the master's report.

*John G. Johnson,* with him *R. O. Moon* and *Edward P. Bliss,* for appellant.—The question as to what constitutes the cost of manufacture has been frequently passed upon in suits for infringements of patent rights where the rule is naturally more stringent against the infringer than in the case of a contract, and the courts have always included all of the items claimed in this case.

In Herring v. Gage, 15 Blatch. 124, and Troy Iron & Nail Factory v. Corning, 3 Fisher, 497, interest was allowed.

In Manufacturing Co. v. Cowing, 105 U. S. 253, costs of tools and machinery were allowed.

In Pavement Co. v. Elizabeth, 1 Bann. & Ard. 439, salaries of superintendents, etc., were allowed.

*Theodore F. Jenkins,* with him *Charles Lex Smyth,* for appellee.

PER CURIAM, January 29, 1900:

We have considered with much care the report of the master in this case and the argument of the learned counsel for the appellant. We are not convinced that there was any error in the findings and conclusions of the master, and we therefore affirm the decree upon the report made by him.

Decree affirmed and appeal dismissed at the cost of the appellant.