# Wytheville.

## Juniper Lumber Company v. John M. Nelson, Jr., Inc.

June 15, 1922.

1. Rescission, Cancellation and Reformation—*Cancellation of Contract by Mutual Consent—Action for Prior Breach—Case at Bar.*—Plaintiff and defendant entered into a contract under which plaintiff was to make defendant a loan as of a certain date, and was to have the exclusive agency to sell defendant's lumber, a certain amount of which was to be supplied each month. There was delay in making the loan and a failure to supply the required amount of lumber each month. It was then agreed that defendant would take up the loan on the day of its maturity, and that the sales agreement would be released and cancelled.

   *Held:* That the cancellation extinguished the right of action and claim of plaintiff for damages arising out of the loss of commissions which would have been earned before the cancellation if there had been no breach in the delivery of the lumber, notwithstanding that after the payment of the loan attorney for plaintiff telegraphed defendant that he released the agreement, "it being understood and agreed that the said agreement shall be cancelled as of this date."

2. Rescission, Cancellation and Reformation—*Cancellation by Mutual Consent—Rights Arising Prior to the Date of the Cancellation.*—Where the parties to a contract mutually agree to its cancellation, their rights as to matters arising prior to the date of the cancellation depend upon the intention to be deduced from the agreement of cancellation, construed in the light of the attending circumstances.

3. Rescission, Cancellation and Reformation—*What amounts to Rescission by Mutual Consent.*—When a party, even without right, claims to rescind a contract, if the other party agrees to the rescission, or does not object thereto and permits it to be rescinded, the rescission is by mutual consent.

4. Rescission, Cancellation and Reformation—*Cancellation of Contract by Mutual Consent—Reservation of Right to Recover Unliquidated Damages Arising Out of a Previous Breach.*—The true rule of law is that when an executory agreement partly performed is mutually cancelled, if any right is reserved to recover unliquidated damages arising out of a previous breach thereof, it should be reserved ex-

pressly, and that the burden is upon one who alleges such a reservation to show that this was the mutual understanding. A mutual rescission, abrogation, release, or cancellation, of such a contract, without reservations, terminates it so as to preclude the recovery of damages for any previous breach thereof.

5. RESCISSION, CANCELLATION AND REFORMATION—*Cancellation of Contract by Mutual Consent—Reservation of Right to Recover Unliquidated Damages Arising Out of a Previous Breach.*—Such a reservation to recover unliquidated damages arising out of a previous breach of a contract after the cancellation of the contract by mutual agreement cannot rest either upon silence, mental reservation, or equivocal language. The right to sue for past breaches of a contract which has been cancelled by mutual agreement should be found in that agreement, fairly construed, or it cannot be held to exist.

Error to a judgment of the Circuit Court of the city of Norfolk on a petition praying the issuance of an attachment. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*G. M. Dillard,* for the plaintiff in error.

*Hugh C. Davis, Hugh W. Davis* and *William L. Parker,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The plaintiff in error, hereafter called the Juniper Company, complains of a judgment against it in favor of the defendant in error, hereafter called the Nelson Company, and the controversy arises out of these facts:

[1] The Juniper Company owned several tracts of standing timber in North Carolina, and was engaged in the business of manufacturing its timber into lumber. The Nelson Company was engaged in the business of selling lumber in the city of Baltimore, Md. The two corporations entered into a contract whereby the Nelson

Company agreed to advance to the Juniper Company
$15,000 on December 1, 1919, which was secured by a
second mortgage on the property of the borrower,
evidenced by a note payable June 1, 1920, in considera-
tion of which the lender was given the exclusive agency
to sell the juniper lumber manufactured by the Juniper
Company for an indefinite time, in consideration of a
commission of 10 per cent. of the net proceeds of sale,
and the lumber was to be supplied, at the rate of 200,000
feet per month, beginning March 1, 1920, to be sold
at current market prices and accounted for. The
$15,000 loan, instead of being received December 1,
1919, was not received by the borrower until January
31, 1920. The failure to receive this amount, together
with the difficulty of obtaining the necessary labor to
operate the mill, are stated to have contributed to the
failure of the Juniper Company to manufacture and ship
the quantity of lumber required by the contract. The
Juniper Company asked for an extension of time for the
payment of the loan, as well as for an abatement of
two months' interest, while the Nelson Company insisted
upon the prompt payment of the loan with six months'
interest. Representatives of the two companies met
at the office of Mottu & Co. on May 20, 1920, ten
days before the loan matured, it then being manifest
that their plans had miscarried and that it was neces-
sary to readjust them. This conference resulted in a
promise that the Juniper Company, through its agents,
Mottu & Co., would secure funds to take up the
$15,000 loan on the day of its maturity, June 1, 1920,
in response to the insistence of the Nelson Company,
and that thereupon the sales agreement should be re-
leased and cancelled.

May 29th, Mottu & Co., representing the Juniper
Company, wrote to the Nelson Company, reminding

them of the agreement of May 20th, to release the
sales agreement, and requested that the notes be pre-
sented for payment June 1st, accompanied by a release
of such sales agreement, in accordance with previous
understanding. These notes were presented in Norfolk
at maturity, June 1st, and fully paid, with six months'
interest from December 1, 1919, although the money
had only been used by the Juniper Company for four
months. On the same date this telegram was sent to
Hugh W. Davis, attorney representing the Nelson Com-
pany in Norfolk:

"This will authorize you to release our sales agree-
ment with Juniper Lumber Company on payment of
fifteen thousand dollars, notes due today.

"John M. Nelson, Jr., Inc., per John M. Nelson,
Jr., president."

On the same date Mr. Davis transmitted this
telegram to the Juniper Lumber Company with a
letter reading thus:

"Upon authority contained in the enclosed telegram
dated June 1, 1920, and hereto attached, I hereby
release, on behalf of John M. Nelson, Jr., Incorporated,
the Juniper Lumber Company from the further
performance of a certain sales agreement bearing date
January, 1920, between said Juniper Lumber Company
and said John M. Nelson, Jr., Incorporated, it being
understood and agreed that the said agreement shall
be cancelled as of this date and the copies thereof now
in the possession of the parties cancelled as of this
date and exchanged."

On the same date Mottu & Co. wrote to the Nelson
Company thus:

"We have today taken up the three notes made by
the Juniper Lumber Company in the sum of $5,000
each, with six months' accrued interest—an aggregate
payment of $15,450.

"We have before us your telegram to Mr. Hugh W. Davis, in which you authorize him to release the sales agreement between yourselves and the Juniper Lumber Company, and he has written us a letter covering this release, and stating that the copy of the agreement in your possession, duly released, would be sent to us by you. We hope to receive this at your earliest convenience."

To this letter no reply was made by the Nelson Company, and June 5th, Mottu & Co., for the Juniper Company, wrote thus to the Nelson Company:

"We are trying to wind up the affairs of the Juniper Lumber Company. Referring to their shipments for your account to Philadelphia, May 13th tank plank, May 30th shingles, will you be good enough to send us an account sales covering these two cars, and if you have received settlement therefor, your check for any balance that may be due us; we understand, of course, that the shipment of June 10th, boat boards and pine stock, has not yet reached its destination. Thanking you for your attention," etc.

No reply was made to this letter. Then, July 31, 1920, Mottu & Co. wrote another letter to the Nelson Company.

"As a matter of record and to keep the title clear, we beg to request that you be good enough to execute and return to me *soonest* possible the enclosed release of the rights of your company as sales agent under the deeds of trust of the Juniper Lumber Company.

"May we also call your attention to the fact that settlement has not yet been received covering the three cars of lumber shipped you May 13, 1920. As we are very anxious to close up the affairs of this company at the earliest possible date, we will greatly appreciate receiving your account sales covering these shipments, with check to balance.

"Thanking you for your prompt attention to the above, we are," etc.

To this no reply was received. Then, on August 11th, this letter was written:

"Mr. Jno. M. Nelson, Jr., President,
   "John M. Nelson, Jr., Inc.,
      "Baltimore, Maryland.
"Dear Sir:

"Will you be good enough to inform us if you received our letter addressed to you under date of July 31st, enclosing release deed for your execution? If so, kindly let us have said deed at your earliest convenience, also settlement for the lumber shipped you so long ago.

   "Thanking you in advance, we are,
        "Very truly yours,
         "(Signed)   J. P. Andre Mottu,
         "For Juniper Lumber Company."

The reply to that letter stated that the matter would be taken up by their attorney at Norfolk.

There was no further action or communication until October 8th, when this proceeding was instituted by an attachment sued out by the Nelson Company against the property of the Juniper Company. The defendant denied liability and filed its counter claim against the plaintiff for a balance alleged to be due for lumber shipped, some before and some after June 1st, the date of the cancellation, amounting to $2,568.78.

The Nelson Company claimed $4,500, the amount of the commission which would have been earned if the amount of lumber required by the sales contract had been shipped between March 1 and May 30, 1920, subject, however, to a credit of $837.13, the net pro-

ceeds of sales of lumber which had been actually shipped by the Juniper Company, which amount was admitted to be due therefor.

There was a jury trial and a verdict in favor of the plaintiff for $3,292.48, which the Juniper Company moved to set aside upon the ground that it was contrary to the law and the evidence, which motion being overruled, judgment on the verdict was entered, and a writ of error has been allowed to that judgment.

The question presented, then, is whether or not the mutual release and cancellation of June 1st, extinguished or left unimpaired the right of action and claim of the Nelson Company for damages arising out of the loss of the commissions which would have been earned before the cancellation if there had been no breach.

While we have been referred to no case in which the facts were precisely like those here presented, there have been a number of precedents directly or indirectly involving the question, and the principle appears to be very well settled.

[2] In *McCreery* v. *Day*, 119 N. Y. 1, 23 N. E. 198, 16 Am. St. Rep. 793, 6 L. R. A. 503, it is held that where the parties to a contract mutually agree to its cancellation, their rights as to matters arising prior to the date of the cancellation depend upon the intention to be deduced from the agreement of cancellation, construed in the light of the attending circumstances—that is to say, that such contracts are construed according to the general rules governing contracts. It is further said: "Where a contract is rescinded while in course of performance, and claim in respect of performance or of what has been paid or received thereon, will ordinarily 'be referred to the agreement of rescission; and in general no such claim

can be made unless expressly or impliedly reserved upon the rescission.' Leake, Cont. 788, and cases cited."

The same language is adopted as correctly stating the rule in *Eames Vacuum Brake Co.* v. *Prosser*, 157 N. Y. 295, 51 N. E. 986.

In *Winton* v. *Spring*, 18 Cal. 455, the same doctrine is expressed, and the opinion concludes with this pertinent language: "It is much more probable that when parties come to an arrangement of a business matter, they settle all the terms of the contract, than that they leave them unadjusted. The word 'cancel,' applied to the agreement, under the circumstances, means no more than 'doing away with' an existing agreement upon the terms and with the consequences mentioned in the writing. What is not said, is excluded; and whatever was meant to be obligatory, was expressed."

[3] Applying the same rule, this is said in *Ralya* v. *Atkins & Co.*, 157 Ind. 338, 61 N. E. 729: "It is not material whether there had been any breach of said contract by appellee or whether appellant had the right to rescind the same on that account, for when a party, even without right, claims to rescind a contract, if the other party agrees to the rescission, or does not object thereto and permits it to be rescinded, the rescission is by mutual consent. 2 Parsons on Cont. (8th ed.), pp. 677, 678, bot. p. 793, 794; *Folsom* v. *Cornell*, 150 Mass. 115, 22 N. E. 705; *Alden* v. *Thurber*, 149 Mass. 271, 21 N. E. 312. The general effect of a rescission of a contract is to remit both parties to their original rights in respect to the subject matter thereof. 21 Am. & Eng. Ency. of Law 92–94; *Briggs* v. *Murtha*, 12 Phila. 179; *Raymond* v. *Bearnard*, 12 Johns. (N. Y.) 274, 7 Am. Dec. 317, 319; *Gillet* v. *Maynard*,

5 Johns. (N. Y.) 85, 4 Am. Dec. 329. It is evident that when a contract is rescinded by mutual consent or otherwise, no action can be maintained for a breach thereof. 21 Am. & Eng. Ency. of Law 92–94; *Haldeman* v. *Chambers*, 19 Tex. 1, 51, 52; *Briggs* v. *Murtha, supra; Kinney* v. *Kiernan*, 49 N. Y. 164; *DePeyster* v. *Pulver*, 3 Barb. (N. Y.) 284; *Davis* v. *Street*, 1 Carr & P. 18, 19, 12 Eng. Com. Law 23, 24. It follows that if said contract was rescinded as alleged, appellant could not recover thereon for anything that occurred before or after the rescission."

So, also, in the case of *Dreifus* v. *Columbian Exposition Salvage Co.*, 194 Pa. St. 475, 45 Atl. 372, 75 Am. St. Rep. 704, it is held "that where the defendant declared that it would not perform its contract to deliver to plaintiff certain quantities of steel, of specified kinds, at stated prices, they entered into a new contract, reciting the cancellation of the old contract, and acceptance in lieu thereof of an agreement to furnish certain other amounts of other kinds of steel, there is a consideration for the new contract, and a compromise of the old one." And it is said that the term "cancellation" of a contract necessarily implies waiver of all rights thereunder by the parties.

In *Schwab Safe & Lock Co.* v. *Snow*, 47 Utah 202, 152 Pac. 171, referring to certain contracts for sales of iron safes, this is said: "The defendant, no doubt, had a right to propose the cancellation of any order that had been accepted by the plaintiff, and the plaintiff had a clear legal right to accept his proposal. After the proposal to cancel any standing order was accepted, that terminated the contract respecting the order thus cancelled, and we cannot see how the same could be reinstated, except by a new agreement between the parties. To be more specific: The order by

the defendant and the acceptance thereof by the plaintiff, as a matter of course constituted a contract binding upon both parties. The defendant, however, proposed an unconditional cancellation of the order, and the plaintiff accepted the proposition. This, in law, constituted a rescission or cancellation, whatever it may be called, of an executory contract by mutual consent, and in view that the contract was executory the acceptance by plaintiff of defendant's proposal to cancel or rescind the order was a sufficient consideration to support such rescission or cancellation. 1 Page on Contracts, section 317. In view, therefore, that the defendant unconditionally cancelled the order and the plaintiff unconditionally joined in the proposed cancellation, it inevitably follows that the contract which arose by reason of the accepted order ceased to exist. In view that the contract was executory, if it was cancelled or rescinded as to one party, it of necessity must also have ceased to exist as to the other. To illustrate: Suppose the plaintiff had sued the defendant for a breach of the contract after it had accepted his proposition to cancel the order; could it maintain an action for breach of contract? The question answers itself. If, therefore, the contract is cancelled so that one of the parties may not sustain an action for its breach, it must likewise be so as to the other, unless there is a reservation of some kind by one of the parties. In view of the unconditional cancellation of the order for the Bishop safe by the defendant and its unconditional acceptance by the plaintiff, we think the defendant cannot recover damages as for a breach of the contract which arose from the acceptance of the cancelled order." 6 R. C. L. 942; 13 C. J. 603; 3 Williston on Contracts, sec. 1827; 2 Black on Rescission & Cancellation, sec. 535.

The defendant in error cites and relies upon three cases—*Hayes* v. *City of Nashville*, 80 Fed. 641, 26 C. C. A. 59 (which is a case of rescission by one party pursuant to the contract, and, hence, is inapplicable); *Alabama Oil, etc., Co.* v. *Sun Co.*, 99 Tex. 606, 92 S. W. 253; and *Garrett* v. *Danner* (Tex. Civ. App.), 146 S. W. 678. We do not think any good purpose could be served by analyzing these cases, and deem it sufficient to say that each of them expressly recognizes the doctrine to which we have previously referred as applicable to cancellations or rescissions of executory contracts by mutual consent of the parties, and that we decline to follow them in so far as they express views contrary to those here expressed.

[4] Reverting to the facts of this case, then, and applying these principles thereto, we find that the only ground upon which it is sought to sustain the judgment is based upon the letter of the attorney for the Nelson Company to Mottu & Co. of June 1st, and the language relied on is that it is there stated that the Juniper Company was relieved from "further performance" of the sales agreement, which should be "cancelled as of this date." Upon this the whole case for the Nelson Company rests, and it is claimed that because of this language used after the terms of the cancellation had been agreed to, which it must be noted was neither contained nor suggested in the telegram from his principal authorizing him to consummate the previous understanding of the parties, we should construe this contract as meaning that the Nelson Company retained and reserved from the operation of its agreement its right to sue for the past breaches of the contract. The true rule of law is that when an executory agreement partly performed is thus mutually cancelled, if any right is reserved to recover unliquidated damages arising out

of a previous breach thereof, it should be reserved expressly, and that the burden is upon one who alleges such a reservation to show that this was the mutual understanding. A mutual rescission, abrogation, release, or cancellation of such a contract, without reservations, terminates it so as to preclude the recovery of damages for any previous breach thereof.

[5] There is little conflict in the parol testimony. The Nelson Company was anxious to have the $15,000 loan returned to it, and the Juniper Compnay was in such financial condition that it was unable to do so unless it could regain control of its property and be relieved from the obligations imposed by the sales agreement, and it is perfectly clear that the Juniper Company and its representatives construed the cancellation agreement as absolute and unconditional. If this claim had been asserted at the time of the negotiations, it may be that the Juniper Company would not have acceded to the cancellation, for it might have preferred to retain its rights under the sales agreement, and to ship the amount of lumber for which it was then in default. As a matter of fact it did voluntarily consign three carloads of lumber to the Nelson Company for sale thereafter, on June 10th. That it considered the sales agreement finally and unconditionally cancelled and abrogated is apparent from the correspondence, and cannot be doubted. It seems almost equally clear that the Nelson Company at that time took the same view of the cancellation agreement, because there is nothing in the record, except the attorney's letter, from which we have quoted, which in any way suggests that any reservation whatever was then made or contemplated. Notwithstanding the fact that they knew from the correspondence the precise construction which the Juniper Company placed upon the cancellation agree-

ment, the Nelson Company did not, by word or sign, indicate that they construed it differently until more than four months thereafter, when, without any previous demand therefor, they sought to recover the amount of damages here claimed. Such a reservation as is here asserted after the cancellation of a contract by mutual agreement cannot rest either upon silence, mental reservation, or equivocal language. It is the agreement to cancel which we must construe—that is, we must determine from the language used, if that is unambiguous, what the parties thereto mutually intended to express by that agreement. If the Nelson Company intended to make this reservation, they should have expressed it and could not do so either by equivocation or by silence. Such a right to sue for past breaches of such a contract which has been thus cancelled by mutual agreement should be found in that agreement, fairly construed, or it cannot be held to exist.

That the view here taken is based upon right reason and justice is well illustrated in this instance, for it may be that if this claim for unliquidated damages for the past breaches of the contract had been asserted, or an effort had been made to reserve the right of action therefor, at the time of the negotiations, the Juniper Company might have refused to assent to the cancellation of the sales agreement. It might have made some counter proposition, or have preferred to retain its rights thereunder and to repair the breach of its contract by shipping the required quantity of lumber and thereby reduced or discharged its liability. Certainly it seems to us that frankness and fair dealing required the Nelson Company to assert all of its claims arising under the sales agreement during the negotiations for its cancellation, and that failing to do so,

it must thereafter hold its peace. To allow it to recover would be in effect to introduce a new provision in the cancellation contract to which the Juniper Company has never assented.

We conclude, therefore, that the trial court erred in refusing to set aside this verdict, which it appears to us is contrary to the evidence and unsupported by the evidence.

It further appears, from the admissions in the pleadings, that the Nelson Company is indebted to the Juniper Company in the sum of $837.13 for the proceeds of lumber, some of which was shipped before and some after the contract had been cancelled, for which it has never accounted, and therefore the verdict will be set aside, the judgment reversed, and judgment entered here in favor of the Juniper Company against the Nelson Company for that amount with interest from July 1, 1920.

*Reversed.*