**TRANSPORTATION EQUIPMENT RENT-ALS, INC., (Plaintiff) Appellant,**

**v.**

**John L. STRANDBERG, Sr., (Defendant) Respondent.**

**No. 50848.**

Supreme Court of Missouri,

Division No. 1.

July 12, 1965.

A. J. Falcone, Kansas City, for plaintiff-appellant.

Thomas J. Leittem, Robert R. Raymond, Whitson G. Rogers, Kansas City, Shughart, Thomson & Kilroy, Kansas City, of counsel, for defendant-respondent.

HOLMAN, Judge.

In this action plaintiff sought to recover from defendant for certain items (totaling $19,851.83) alleged to be due it by reason of the provisions of an automotive equipment lease agreement signed by the parties on March 31, 1960. The trial resulted in a verdict for the defendant. Plaintiff has duly appealed from the ensuing judgment.

Defendant, John L. Strandberg, Sr., was an officer and stockholder of Concrete Building Products Company (hereinafter sometimes referred to as the Company) of Harrisonville, Missouri. He had engaged in the concrete block business for many years. In 1951 his son, John L. Strandberg, Jr., became active in the business and, after 1957, defendant was semi-retired and did not actively engage in the operation of the business. In the spring of 1960 the son endeavored to purchase certain trucks and other heavy equipment used in the business. He located certain equipment but was unable to finance the purchase of it because of the impaired financial condition of the Company.

Plaintiff was engaged in a nationwide leasing business, specializing in the leasing of trucks, trailers, and other similar equipment. As a result of certain negotiations between plaintiff's branch manager, William D. Hull, and the Strandbergs, plaintiff purchased seven items of equipment needed by the Company and leased them to defendant with the Company as guarantor of defendant's obligations under the lease. Because of the financial condition of the Company plaintiff required that the lease be made with defendant so that his assets would be obligated for the performance of the lease.

Under the terms of the lease defendant was obligated to pay a total rental of $982.-22 per month, and the lease acknowledged as paid in advance the last six months' rental. Four of the vehicles were leased for a term of two years, one for three years, and two for five years. The lease specified the original value of each item of equipment and then set up the monthly rent per vehicle and also a monthly depreciation reserve. This reserve was arrived at by estimating the residual salvage value of the

item at the end of the lease and deducting that amount from the original value, and then dividing the remainder by the total number of months for the term of the lease.

The lease provides that upon its termination, or upon default in the payment of rent, the lessor shall take possession of the equipment and during the succeeding twenty-one days shall sell the same for the highest cash offer obtainable, with the proviso, however, that lessor shall first give reasonable notice in writing to lessee as to the highest cash offer received. The lessee is then given the right to object to such sale, in which case the lessor shall hold the equipment for the full twenty-one days and may then proceed to sell the same and account to the lessee. It further provides that upon the sale of a vehicle the amount received shall be added to the monthly depreciation reserve, computed to date, and if the total amount is in excess of the original value the lessor shall pay the amount of such excess to the lessee. But, if the amount so determined is less than the original value, the lessee shall pay the difference to the lessor. As an alternative, in the event of default, the lessor is given the right to lease the equipment for the remainder of the term for the account of the lessee, and if such net rental is less than that provided in the lease the lessee shall pay the deficiency to the lessor. There is also a provision in the lease that in the event lessor is required to institute a suit to enforce its rights under the lease the lessee shall pay the sum that may be allowed by the court as attorney fees.

The Company ceased operations early in 1961 and shortly after April 10, 1961, plaintiff took possession of the leased equipment. Some of the equipment was sold within the 21-day period and admittedly no notice was given to the defendant with respect to the highest cash offer received therefor. All of the equipment was eventually sold by plaintiff and it claimed a deficiency resulting from the sale totaling $6,430.66. Plaintiff also claimed rent due of $8,839.98, and a

reasonable attorney fee of $4,581.19, making a total claim of $19,851.83.

After plaintiff had obtained possession of the leased vehicles its branch manager, Mr. Hull, prepared four separate agreements which we will refer to as "cancellation agreements." Except for the leased vehicles described therein these agreements are identical. They contain the following:

"The undersigned parties to the attached Lease Agreement dated the 31st day of March 1960, hereby mutually agree to cancel that portion of Exhibit 'A' dated the 25th day of April, 1960, pertaining to the above vehicles; such cancellation to be effective the 25th day of April, 1961." Exhibit "A" (made a part of the lease) consists of several pages describing the vehicles covered by the lease, the rent, depreciation reserve, term, and insurance coverage required.

Mr. Hull testified that after plaintiff obtained possession of the vehicles he prepared the cancellation agreements, signed them on behalf of plaintiff, and mailed them to defendant with the request that he sign them. He stated that he later called defendant and further explained the cancellation agreements and thereafter defendant signed the agreements and mailed them to him. Mr. Hull denied that he told defendant that if he signed the agreements he would not owe any rent. He stated that, in the telephone conversation, he explained to defendant that the purpose of the agreements was to cancel the equipment from the terms of the contract so that plaintiff would not be required to continue billing the defendant for the additional monthly rent on the equipment.

Defendant, in his testimony, stated a different version of the telephone conversation he had with Mr. Hull concerning the cancellation agreements. He said that when he received the papers he did not sign them because he felt there was sufficient value in the equipment to take care of the deficiency in the rental; that Mr. Hull

thereafter called and asked him to sign the papers and that he told Mr. Hull that he realized he owed certain obligations under the lease and that he would not sign the agreements unless it would "wipe out" his indebtedness under the lease; and that Mr. Hull replied that that was the reason for signing the cancellation agreements.

Defendant further stated that, relying upon Mr. Hull's statement that all of his obligations owed under the lease would be wiped out if he signed and returned the cancellation agreements, he did sign same and sent them to Mr. Hull in Omaha.

In this case defendant relied upon three defenses which were: (1) that the cancellation agreements constituted a release of all of defendant's obligations under the contract; (2) that plaintiff was guilty of a material breach of contract in not giving defendant notice of the bids before selling certain of the equipment and therefore should not be permitted to recover as to the deficiency item; and (3) that the value of the equipment repossessed was in excess of the amount due under the contract and therefore the claim of plaintiff, if any, was accordingly extinguished.

The first contention briefed by plaintiff is that the court erred in submitting the cancellation agreement to the jury as a release of plaintiff's claim. It is said that such is particularly true as relates to the claim for rent which had already accrued; that it was entitled to a judgment, as a matter of law, for that item.

■ "It is always competent for the parties to rescind a subsisting contract by an agreement to that effect. Persons competent to contract can as validly agree to rescind a contract already made as they could agree to make it originally. * * * An agreement of rescission depends upon the intention of the parties, and, since a contract is made by the joint assent of two or more parties, it can be rescinded by agreement only by the joint assent of both, or all, such parties." 17 Am.Jur.2d § 490, p. 962.

See also Thumm v. Lohr, Mo.App., 306 S. W.2d 604 [6], and cases there cited.

The real question here involved is whether the trial court should have interpreted the new contract (cancellation agreement) as a matter of law or whether it was proper for the jury to construe the agreement, taking into consideration the extrinsic evidence relating thereto. It has been said that where the language of the contract on its face "is not clear or is ambiguous, and resort to extrinsic evidence is necessary, if such evidence be conflicting, or, if not conflicting, different conclusions might reasonably be drawn therefrom, the construction of the agreement is for the jury under proper instructions from the Court." National Corporation v. Allan, Mo.App., 280 S.W.2d 428, 432.

■ For convenience, we repeat the main provision of the cancellation agreement, as follows: "The undersigned parties to the attached Lease Agreement dated the 31st day of March 1960, hereby mutually agree to cancel that portion of Exhibit 'A' dated the 25th day of April, 1960, pertaining to the above vehicles; such cancellation to be effective the 25th day of April, 1961." As stated, the various pages of Exhibit "A" describe the leased vehicles and state the original value, monthly rent, depreciation reserve, term, and insurance requirements of the lease. We think the brief cancellation agreement, quoted above, is certainly vague and ambiguous. The word "cancel" is defined as "the act of annulling or rescinding." Webster's Third New International Dictionary. However, as used in the agreement, the meaning of the words "cancel" and "cancellation" is not clear. The agreement could mean (1) that it merely released the vehicles from the future operation of the rental provisions of the lease (as plaintiff contends), but it is also reasonably susceptible of the construction (2) that it cancelled or rescinded all obligations of either party under the lease. In that connection it should be remembered that defendant testified, without objection, that

plaintiff's agent stated to him that the object of the agreement was to cancel (wipe out) his indebtedness under the lease.

■ An agreement such as the one now before us must be supported by a consideration. We have concluded, however, that there was a sufficient consideration for the agreement, as construed in (2), supra, and as submitted in Instruction No. 3. The consideration to defendant was his release from the payment of all obligations under the lease. The consideration to plaintiff was that it could retain the vehicles indefinitely or could sell them in any manner it chose without any notice to defendant concerning the price. Also, as a result of the agreement, plaintiff was released from liability for having admittedly violated the contract by selling certain vehicles within the 21-day period without any notice to defendant. "The consideration for such annulment or rescission is to be found in the fact that each thereby reciprocally receives from the other a renunciation and surrender of the rights, benefits, and advantages which the contract conferred and a release and discharge from the burdens and obligations it imposed." 17 Am.Jur.2d § 491, pp. 963, 964.

■ We rule that the cancellation agreement was supported by a sufficient consideration; that it was ambiguous and that the court properly submitted the construction thereof to the jury. Juniper Lumber Co. v. John M. Nelson, Jr., Inc., 133 Va. 146, 112 S.E. 564, 24 A.L.R. 247; Parker v. School Dist. of Valley Park, Mo.App., 325 S.W.2d 59. In support of its contention plaintiff has cited Schwartz v. Van Winkle, Sup., 47 N.Y.S.2d 264, and Cherry Valley Iron Works v. Florence Iron River Co., 64 F. 569 (6th Cir.1894), but the facts in those cases are so different from those in the case before us that they cannot reasonably be applied in the determination of the issues.

■ Plaintiff's next point is that the court erred in giving Instruction 3 because it failed to hypothesize sufficient facts for the jury to make a finding that the cancellation agreement constituted a release. The instruction required a finding "that plaintiff and defendant entered into an agreement referred to in evidence as a cancellation agreement whereby all disputes between plaintiff and defendant were settled including any disputes existing under the lease agreement mentioned in evidence, and if you further find that defendant performed all of his obligations under the terms of said cancellation agreement and if you further find that thereby plaintiff released defendant from all of defendant's obligations under the said lease agreement, then your verdict must be in favor of defendant Strandberg * * *."

Specifically, plaintiff says that the instruction was deficient in that it did not require a finding that both parties *intended* to release all of their rights under the lease agreement. In support of that contention plaintiff relies on certain statements in the case of Chouteau v. Jupiter Iron-Works, 94 Mo. 388, 7 S.W. 467. That case, however, has no application here because it did not involve an agreement. It was a case in which an abandonment was sought to be established by the acts and conduct of the parties. In our research we find no authority to support a requirement that specific intent must be hypothesized in an instruction of this type. The jury was required to find the essential substantive facts, i. e., that the parties entered into an agreement whereby all disputes between them were settled. The element of the intent of each party is implicit in that finding. The parties could not legally be said to have entered into such an agreement unless they intended to do so.

■ We do not think the instruction was reversibly erroneous in failing to include a more detailed hypothesis of the factual elements involved. If plaintiff desired that the element of intent be specifically found by the jury it had the privilege and duty of

offering an instruction for that purpose. That it did not do. The contention is overruled.

 Instruction No. 4 submitted as a defense to the item of the deficiency from the sale of the vehicles ($6,430) the hypothesized breach of the contract by plaintiff in selling certain vehicles within 21 days without giving notice to defendant as to the highest cash offer received. As its final point plaintiff contends that the instruction was erroneous because it did not define the phrase "material breach." We have concluded that the words involved are not technical but are ordinary words which are commonly understood and that no special definition was required. We note from an examination of Vol. 32, Mo.Dig., Words and Phrases, that no appellate court of this state has defined the phrase "material breach." That fact could reasonably be considered as an indication that the courts have considered it unnecessary to define same. Furthermore, if plaintiff desired to have that phrase defined for the jury it should have offered an instruction for that purpose. Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc., Mo.Sup., 338 S.W. 2d 1 [11]. We rule this point contrary to plaintiff's contention.

The judgment is affirmed.

All concur.