## CIRCUIT COURT OF FAIRFAX COUNTY

Phoenix Medical Electronics
Services, Inc.

v.

Radiologic Resources, Inc.,
and William Bunnell

April 26, 1989

Case No. (Law) 84998

By JUDGE JACK B. STEVENS

This matter has been before the Court on the demurrer of Defendants Radiologic Resources, Inc. (RRI) and William Bunnell to the Amended Motion for Judgment and, in addition, upon the Plea in Bar of the Plaintiff, Phoenix Medical Electronic Services, Inc. (PMES) to the Amended Counterclaim of RRI. For the reasons that follow, the demurrer is overruled and the Plea in Bar is granted.

A. *Demurrer to the Amended Motion for Judgment*

Defendants base their demurrer to the Amended Motion for Judgment on the following three grounds:

1. A corporation can only act by and through its agent(s), and the Amended Motion for Judgment fails to state who or what agent entered into any contract or authorized services in behalf of the corporation.

2. RRI and William Bunnell cannot both be held liable for the same services rendered or contracted for. An election of one party to sue must be made by the plaintiff.

3. By naming two parties as defendants, there has been a misjoinder of parties.

A Demurrer admits the truth of all facts expressly alleged, those facts which are impliedly alleged, and those facts which may be fairly inferred from the facts alleged. *Duggin v. Adams*, 234 Va. 221 (1987).[1] The failure to specifically name the agent(s) who acted on the corporation's behalf does not make the Motion for Judgment subject to demurrer. The Amended Motion for Judgment adequately alleges that PMES seeks payment for services performed and materials provided by PMES for RRI and, therefore, states a cause of action. Discovery is available to supply any details, such as the specific agent(s) involved.

Grounds 2 and 3 argue a misjoinder of parties on the basis that both RRI and William Bunnell may not be held liable for the payment of services provided by PMES.

Aside from the fact that the Amended Motion for Judgment alleges a contract with both Defendants, Section 8.01-5(A) Code of Virginia, (1950), as amended, provides:

No action or suit shall abate or be defeated by the nonjoinder or misjoinder of parties, plaintiff or defendant, but whenever such nonjoinder or misjoinder shall be made to appear by affidavit or otherwise, new parties may be added and parties misjoined may be dropped by order of the court at any time as the ends of justice may require . . . .

Additionally, the Court has specifically held that the misjoinder of parties is not a ground for demurrer. *Webb v. United States Fidelity & Guaranty Co.*, 165 Va. 388 (1935), *Baird v. Tyler*, 185 Va. 601 (1946), *See also* 1A M.J. *Abatement* § 14, 14A M.J. *Parties* § 22. Therefore, assuming *arguendo* that the joinder of RRI and Bunnell

---

[1] In Stonegap C. Co. v. Hamilton, 119 Va. 271 (1916), before the advent of modern "notice" pleading, the Court opined that "a declaration is sufficient if it informs the defendant of the nature of the demand made against him, and states such facts as will enable the court to say that if the facts are proven, as alleged, they establish a good cause of action . . . ." Id. at 280

is indeed a misjoinder, the misjoinder cannot be reached by demurrer.

## B. *Plea in Bar to Amended Counterclaim*

The Plea in Bar to RRI's Amended Counterclaim is based on the cancellation of the September 11, 1985, contract on which the counterclaim is predicated. On July 1, 1987, PMES sent to RRI a termination of agreement in accordance with the terms of the September 11, 1985, contract. The contract provided "either party may cancel this agreement without cause providing sixty (60) days advance written notification and explanation." On July 6, 1987, RRI responded to PMES' termination letter and accepted the cancellation *without qualification.* RRI now seeks commissions due from two contracts entered into by PMES and Piedmont prior to the cancellation.

In *Juniper Lumber Co. v. John M. Nelson, Jr., Inc.,* 133 Va. 146 (1922), the Court stated at page 152 that:

> [where] a contract is rescinded while in course of performance, and claim in respect of performance or of what has been paid or received thereon, will ordinarily "be referred to the agreement of rescission; and in general no such claim can be made unless expressly or impliedly reserved upon the rescission."

In addition, the Court stated "it is evident that when a contract is rescinded by mutual consent or otherwise, no action can be maintained for a ·breach thereof." *Id.* at 154.

Although the facts in *Juniper* did not lend themselves to a determination as to whether recovery may be had for performance rendered prior to cancellation, the Restatement of Contracts states:

> (2) An agreement of rescission discharges all remaining duties of performance of both parties. It is a question of interpretation whether the parties also agree to make restitution with respect to performance that has been rendered.

ALI, Restatement of Contracts 2d, § 283 (1981).

In addition, Corbin states that whether a contract is still viable after rescission so that recovery may be had for part performance depends on:

> [i]nterpretation of the terms of the agreement of rescission, in the light of the circumstances that surrounded its making. In this process the same common-sense rules should be applied as in the interpretation of the contract that is being "rescinded."

5A Corbin on Contracts, § 1236.

The Court concludes that the July 6, 1987, letter which accepted the cancellation without qualification constituted mutual consent as defined in *Juniper*. As such, no action for breach of contract can be brought unless such right was expressly reserved. At the time of the July 6, 1987, letter by RRI, the company was aware of the 1986 contracts entered into by PMES and Piedmont and the commissions to which it was entitled. The letter, however, in no way reserved the right to recover for the commissions earned.

RRI argues that the court in *Juniper* did in fact allow recovery for the commissions earned prior to the cancellation, citing p. 159 of the opinion. The language relied upon, however, refers to proceeds owed by Nelson (defendant) to Juniper (plaintiff) for the sale of lumber for which Nelson had not accounted. This language does not refer to commissions owed by Juniper to Nelson for its sales efforts in accordance with their agreement.