WILLIAM McCREERY et al., Appellants, *v.* MELVILLE C. DAY et al., Respondents.

Where a contract is rescinded while in course of performance, no claim in respect of performance, or of what has been paid or received thereon may thereafter be made, unless expressly or impliedly reserved upon the rescission.

Whatever, under the former system of procedure, would have constituted a good ground in equity for restraining the enforcement of a covenant or decreeing its discharge, will now constitute a good equitable defense to an action on the covenant itself.

A substituted parol agreement followed by actual performance, whether made and executed before or after breach of a covenant in the original contract, is a good accord and satisfaction of the covenant. So, also, a new agreement, although without performance, if based on a good consideration, will be a satisfaction if accepted as such.

A contract under seal may be annulled by a substituted parol agreement followed by actual performance.

(Argued November 26, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 24, 1889, which affirmed a judgment in favor of defendants, entered upon an order of Special Term granting a motion for judgment on the pleadings.

This action was brought to recover certain sums alleged

to be due plaintiffs under a contract dated March 2, 1882, between the plaintiffs, as parties of the first part, and C. H. Andrews, as party of the second part, and C. K. Garrison, defendant's testator, as party of the third part.

By the terms of the contract, plaintiffs sold to Garrison a one-fourth interest in a contract for the construction of the railroad of the Pittsburgh, Youngstown and Chicago Railroad Company, running from Pittsburgh to Akron, and agreed to turn over to Garrison a one-fourth part of all cash, bonds and stock which should be received from that railroad company in payment for the work done under the construction contract. Garrison agreed to pay the plaintiffs, for work already done and materials furnished and rights acquired up to the date of the contract, the sum of $150,000, and pay them, from time to time thereafter, one-fourth of the amounts expended by them in the further construction of the road under the contract.

Plaintiffs sought to recover the one-fourth part of moneys expended by them after March 2, 1882, in carrying out their contract with the Pittsburgh, Youngstown and Chicago Railroad Company, and also to recover interest during the time Garrison delayed payment of the sum of $150,000.

The answer set up, among other things, the following facts: On the 13th day of April, 1882, the plaintiffs and said C. H. Andrews executed an agreement with the Pittsburgh and Western Railroad Company, by which the plaintiffs and C. H. Andrews agreed to sell to the Pittsburgh and Western Railroad Company a one-fourth interest in the Pittsburgh, Youngstown and Chicago railroad, as described, between Newcastle Junction and Akron, for $150,000, those persons agreeing to pay for all expenditures for work done or materials furnished up to that date. The Pittsburgh, Youngstown and Chicago Railroad Company was to abandon the further construction of the projected railroad between the towns of Newcastle Junction and Akron, for the building of which railroad between those points the Pittsburgh, Cleveland and Toledo Railroad Company

was created. On the 6th day of November, 1882, Garrison, the defendants' testator wrote to the plaintiffs and to C. H. Andrews a letter acknowledging the receipt of the papers designed for the completion of the road from Akron to Newcastle Junction by the Pittsburgh and Western railroad, consenting to sign them, but only on the understanding and condition "that I am not to pay any more money than Mr. Humphrey's company" (the Pittsburgh and Western) "pays, as provided in the agreement you made with him April thirteenth — that is, $150,000 and one-fourth of the cost of the road to Newcastle Junction after that date." Garrison in the same letter asserted that he had given up the agreement of the second of March above mentioned, and declared that he no longer desired any interest in the railroad from Newcastle Junction to Pittsburgh. Afterwards, and in compliance with the terms of that letter, the plaintiffs, with the said C. H. Andrews and the defendants' testator, caused an agreement to be indorsed on the contract of March 2, 1882, as follows: "It is agreed by the parties hereto that the within contract is annulled and of no further effect, the same having been superseded by the agreement and arrangement made in lieu thereof, as embodied in the letter of C. K. Garrison  *  *  *  *  dated November 6, 1882, and by a certain agreement made between C. H. Andrews, W. C. Andrews, W. McCreery, James Gallerey, Solomon Humpheys and C. K. Garrison, all bearing date October 25, 1882." This writing was signed by all the parties.

The agreement last referred to was fully carried out by all the parties. An order was made requiring plaintiffs to reply, which they did, substantially admitting the foregoing averments of the answer.

*J. W. Hawes* for appellants. In no event can the alleged annulment wipe out the rights already accrued to the plaintiffs. (*Roe* v. *Conway*, 74 N. Y. 201; *Tice* v. *Zinsser*, 76 id. 549; *Howard* v. *W. & S. R. R. Co.*, 1 Gill, 311; *Killip* v. *Metzen*, 50 N. Y. 658; *Allaire* v. *Whitney*, 1 Hill, 484; *Bowman* v. *Teall*, 23 Wend. 306; *Hill* v. *Blake*, 16 J. & S.

253; *McKnight* v. *Dunlop*, 5 N. Y. 537; *Hinsdale* v. *White*, 6 Hill, 507; *McKeon* v. *Whitney*, 3 Denio, 452; *Johnson* v. *Oppenheim*, 55 N. Y. 280; *Barber* v. *Rose*, 5 Hill. 76; *Shute* v. *Hamilton*, 3 Daly, 462, 470; *Harrison* v. *M. P. R. R. Co.*, 74 Mo. 364, 373; *C. & T. R. R. Co.* v. *Perkins*, 17 Mich. 296; *Mallory* v. *Lord*, 29 Barb. 454; *Coon* v. *Reed*, 1 Hilt. 511; *Towers* v. *Barrett*, 1 Term R. 133; *Davis* v. *Street*, 1 Car. & Payne, 18; *Barber* v. *Lyon*, 8 Blackf. 215; *Kelsey* v. *U. S.*, 1 Ct. of Claims, 374; *Watkins* v. *Hodges*, 6 H. & J. 38; *Gillet* v. *Maynard*, 5 John. 85; *Thompson* v. *Lyons*, 21 J. & S. 101; *McMaster* v. *State*, 108 N. Y. 542; *Sperry* v. *Miller*, 16 id. 407; *Endriss* v. *B. I. I. Co.*, 49 Mich. 279; *Grannewiann* v. *Kloepper*, 24 Ill. App. 277; *Russell* v. *Allerton*, 108 N. Y. 288; *Porteons* v. *Williams*, 21 J. & S. 242.) If the alleged annulment is effective for any purpose, it does not affect the section of the road E. of Newcastle Junction which was continued under the old company. A new agreement to supersede a former one must cover the same ground and be inconsistent with it. Otherwise the old will stand, except as modified. (*Witbeck* v. *Waine*, 16 N. Y. 532; *Martin* v. *Colby*, 42 Hun, 1; *Holdsworth* v. *Tucker*, 3 N. E. Rep. 499; *Norton* v. *Yerdon*, 19 N. Y. Wkly. Dig. 296; *Utley* v. *Donaldson*, 94 U. S. 29; *Murray* v. *Harway*, 56 N. Y. 337; *Coe* v. *Hobby*, 72 id. 141.) The alleged annulment is void for want of consideration. There was no adjustment and settlement of a disputed claim here. (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Smith* v. *Kerr*, 108 id. 31; *Little* v. *Rees*, 34 Minn. 277; *Siguer* v. *Newcomb*, 6 N. Y. S. Rep. 315; *Wharton* v. *M. C. F. Co.*, 1 Mo. App. 577.) A subsequent executory contract to be operative as a defeasance or modification of a previous contract by specialty must be under seal, whether it have a consideration or not, and whether it be made before or after a breach of the previous contract. (*Delacroix* v. *Bulkley*, 13 Wend. 71; *Hume* v. *Taylor*, 63 Ill. 43; *Eddy* v. *Graves*, 23 Wend. 82; *Roe* v. *Conway*, 74 N. Y. 201.)

*William Bronk* and *Melville C. Day* for respondents. The motion for judgment on the pleadings was made at the proper time and place and in the proper manner. (*People* v. *N. R. R. Co.*, 42 N. Y. 217.) Where a contract is rescinded or annulled by the mutual agreement of parties without any reservation as to the time the act of annulment is to take effect, or other restriction, the contract is absolutely at an end and is no longer available to either party for any purpose. (*Beach* v. *Endress*, 51 Barb. 570; *Fullager* v. *Reville*, 3 Hun, 600; *Roe* v. *Conway*, 74 N. Y. 206; *Larkin* v. *Hardenbrook*, 90 id. 333; *McKnight* v. *Dunlap*, 5 id. 546.) The plaintiffs, in their reply, deny that the indorsement on the original contract was made in compliance with Garrison's letter, but they admit the execution of the indorsement, and that specifically refers to the letter. The facts thus specifically admitted must override any general and inconsistent averment of conclusions, such as are set up in the reply. (2 Wait's Pr. 332; *Conaughty* v. *Nichols*, 42 N. Y. 82; *Read* v. *Lambert*, 10 Abb. [N. S.] 428; *Herman* v. *Bencke*, 8 N. Y. S. R. 345.)

ANDREWS, J. The parties by their agreement indorsed on the contract of March 2, 1882, in terms annuled that contract and declared that it should be of no further effect. The claim that the annulment of the contract did not discharge Garrison's obligation under the original contract to pay his proportion of expenditures made by the plaintiffs for the constuction of the Pittsburgh, Youngstown and Chicago railroad, between the date of the contract and its annulment, depends on the intention to be deduced from the agreement of annulment, construed in light of the attending circumstances. Where a contract is rescinded while in the course of performance, any claim in respect of performance, or of what has been paid or received thereon, will ordinarily "be referred to the agreement of rescission and in general no such claim can be made unless expressly or impliedly reserved upon the rescission." (Leake on Contracts, 788, and cases cited.)

The agreement annulling the original contract recites that, the

contract had been "superseded by agreements and arrangements made in lieu thereof," embodied in Garrison's letter of November 6, 1882, and the several contracts executed by the parties to that contract, and others, bearing date October 25, 1882. In ascertaining the scope of the agreement anulling the original contract, the letter and the contracts of October 25, 1882, are to be deemed incorporated into the agreement. Construing these several writings together, they plainly show that the parties intended that Garrision should be discharged from all liability under his contract of March 2, 1882, for any expenditures theretofore made, or thereafter to be made in constructing the line between Pittsburgh and Newcastle Junction. The letter was written after Garrison had received the contracts dated October 25, 1882, for execution, and declares that he will sign them on the condition, and understanding that he is not to pay anything more than Mr. Humphrey's company pays, under the plaintiff's agreement with him of April 13, 1882, "that is $150,000, and one-fourth of the cost of the road to Newcastle Junction, after that date." The agreement with Mr. Humphrey, of April 13, 1882, provided for the construction of the part of the line of the Pittsburgh, Youngstown and Chicago Railroad between Newcastle Junction and Akron, by a new corporation to be formed, and that Humphrey should pay the plaintiffs $150,000 for expenditures incurred and rights acquired on that branch of the road, prior to the making of the contract, and also one-fourth of all expenditures thereafter made in its completion. The letter goes on to state that the agreement with Mr. Humphrey was made "after consulting with me, and, as it insured my road (Wheeling and Lake Erie railroad) a line to Pittsburgh, I was ready to assent to it in place of the agreement of the second of March, and you know I have so considered it since, and that I was owner of one-fourth of the new company, all previous agreements between us being superseded. I do not want any interest in the road from Newcastle Junction to Pittsburgh. I will pay whatever Mr. Humphrey's company has paid on the agreement of the 13th April."

The clear import of the proposition of Mr. Garrison in his letter is, that he would sign the contracts of October 25, 1882, provided he should be placed in the same position in respect to the enterprise, as that occupied by the company represented by Mr. Humphrey, and be relieved from all interest in, or obligation to contribute to the construction of the part of the Pittsburgh, Youngstown and Chicago railroad between Pittsburgh and Newcastle Junction. Garrison, thereafter, executed the contracts of October 25, 1882, relating to the construction of the road between Newcastle Junction and Akron, whereby he assumed other and different obligations from those he had assumed by his contract with the plaintiffs of March 2, 1882.

The main claim in the action is to recover from Garrison's estate, under the contract of March 2, 1882, for a share of expenditures made by the plaintiffs in the construction of the part of the Pittsburgh, Youngstown and Chicago railroad between Pittsburgh and Newcastle Junction, after the date of that contract, and before the execution of the annulment agreement. The agreement annulling the prior contract is supported by an adequate consideration. The new obligation which Garrison assumed under the contracts of October 25, 1882, was alone a sufficient consideration. (*City of Memphis* v. *Brown*, 20 Wall. 289.) There was a consideration also in the mutual agreement of the parties to the prior contract (which was still executory, although in the course of performance) to discharge each other from reciprocal obligations thereunder and to substitute a new and different agreement in place thereof.

The contract of March 2, 1882, is sealed, while the agreement anulling it is unsealed. Upon this fact the plaintiffs make a point, founded on the doctrine of the common law, that a contract under seal cannot be dissolved by a new parol executory agreement, although supported by a good and valuable consideration, "for, every contract or agreement ought to be dissolved by matter of as high a nature as the first deed." (*Countess of Rutland's Case*, Coke, Pt. V, 25*b*.) The application of this rule often produced great

inconvenience and injustice, and the rule itself has been overlaid with distinctions invented by the judges of the common law courts to escape or mitigate its rigor in particular cases.   But in equity the form of the new agreement is not regarded, and under the recent blending of the jurisdiction of law and equity, and the right given by the modern rules of procedure in this country and in England to interpose equitable defenses in legal actions, the common law rule has lost much of its former importance.   A recent English writer, refering to the effect of the common law Procedure Acts in England, says, " The ancient technical rule of the common law, that a contract under seal cannot be varied or discharged by a parol agreement, is thus practically superseded."   (Leake on Contracts, 802.)   Courts of equity often interfered by injunction to restrain proceedings at law to enforce judgments, covenants, or obligations equitably discharged by transactions of which courts of law had no cognizance.   (2 Sto. Eq., § 1573.)   It is a necessary consequence of our changed system of procedure, that whatever formerly would have constituted a good ground in equity for restraining the enforcement of a covenant, or decreeing its discharge, will now constitute a good equitable defense to an action on the covenant itself.   It was one of the subtle distinctions of the common law as to the discharge of covenants by matter *in pais*, that although a specialty before breach could not be discharged by a parol agreement, although founded on a good consideration, nor even by an accord and satisfaction, yet after breach the damages, if unliquidated, could be discharged by an executed parol agreement, because, as was said, in the latter case the cause of action is founded " not merely on the deed, but on the deed and the subsequent wrong." (Broom's Legal Maxims, 848, and cases cited.)   The absurd results to which the common law doctrine sometimes led is illustrated by the case of *Spence* v. *Healey* (8 Exch. 668), in which it was held that a plea to an action on covenant for the payment of a sum certain, that before breach defendant satisfied the covenant by the delivery to, and acceptance by the plaintiff, of goods, machinery, etc., in satisfaction, was

bad, Martin, B., saying, " I am sorry I am compelled to agree in holding that the plea is bad. It is difficult to see the correctness of the reason upon which the rule is founded." I suppose there can be no doubt that the facts presented by the plea in the case of *Spence* v. *Healey* would have constituted a good ground for relief in equity. The technical distinction between a satisfaction before or after breach, seems to have been disregarded in this state, and a new agreement by parol, followed by actual performance of the substituted agreement, whether made and executed before or after breach, is treated as a good accord and satisfaction of the covenant. (*Fleming* v. *Gilbert*, 3 John. 530; *Lattimore* v. *Harsen*, 14 id. 330; *Dearborn* v. *Cross*, 7 Cow. 48; *Allen* v. *Jaquish*, Cowen, J., 21 Wend. 633.) So also, a new agreement, although without performance, if based on a good consideration, will be a satisfaction, if accepted as such. (*Kromer* v. *Heim*, 75 N. Y. 574, and cases cited.)

In the present case it may be justly said, that when the agreement annulling the contract of March 2, 1882, was executed, there had been no breach by Garrison of his covenant therein, as he had not been called upon by the plaintiffs to pay his share of the construction account. But it was the plain intention of the parties that the new arrangement, then entered into, should be a substitute for the liability of Garrison, present and prospective, under the contract of March 2, 1882. The transaction constituted a new agreement in satisfaction of the prior covenant, and was accepted as such. Moreover, it admitted by the reply that the contracts of October 25, 1882, were carried out. It is a case, therefore, of an executory parol contract, made in substitution of the prior sealed contract, afterwards fully executed, which clearly, under the authorities in this state, discharged the prior contract.

In respect to the claim to recover interest during the time the payment of the $150,000 was delayed, it is a sufficient answer that the complaint admits that the principal sum was fully paid prior to September 13, 1882. The claim for interest did not survive, there being no special circumstances

to take the case out of the general rule. (*Cutter* v. *Mayor, etc.,* 92 N. Y. 166, and cases cited.)

We are of opinion that the facts admitted in the pleadings disclose that there was no right of action and that the complaint, for this reason, was properly dismissed.

The judgment should therefore be affirmed.

All concur.

Judgment affirmed.