Catherine A. Gearon, as Executrix Under Last Will and
Testament of Timothy T. Gearon, Deceased, Ap-
pellee-Counter-Appellee, v. Airways Fireproofing
System, Inc., Appellant-Counter-Appellant.

Gen. No. 46,667.

First District, First Division.

January 9, 1956.

Released for publication February 27, 1956.

Tilley, Humphrey, Tiedemann & Hilgendorf, of Chicago, for appellant; Edward Wolfe, of Chicago, of counsel.

Concannon, Dillon & Snook, of Chicago, for appellee; William H. Dillon, and John B. Dillon, both of Chicago, of counsel.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Catherine A. Gearon, as executrix under the last will and testament of Timothy T. Gearon, deceased, brought suit upon a written contract to recover a balance alleged to be due decedent from defendant on corporate stock sold by him during his lifetime to defendant. The court entered an order striking defendant's second amended answer and second amended countercomplaint, and defendant having elected to stand on its pleadings, judgment was entered for plaintiff, from which defendant appeals.

From the pleadings it appears that on December 19, 1952 the decedent, Timothy T. Gearon, his wife Catherine, George L. Candler, his wife Dorothy, and defendant Airways Fireproofing System, Incorporated, entered into a written contract under the terms of which decedent agreed to sell, and defendant agreed to purchase, 499 shares of corporate stock owned by decedent, for the sum of $18,657, payable in weekly installments of $150, the agreement to be retroactive to December 1, 1952. A copy of this agreement was

attached to plaintiff's complaint, as was a copy of a Buy and Sell Agreement, dated in 1947, between the principal stockholders of defendant corporation—plaintiff's decedent, plaintiff, George L. Candler, president of the corporation, and his wife.

Under the terms of this Buy and Sell Agreement, Candler, Gearon and their respective wives agreed to cause insurance to be taken out on the lives of Candler and Gearon, and to accept the proceeds thereof (in the event of the death of either party) in full payment of such party's equity in the defendant corporation. Article IV of the Buy and Sell Agreement provided: "It is mutually agreed that each of the parties hereto shall personally pay and be chargeable with the premiums payable on the policies of life insurance issued on the other. It is further agreed that such payment may be made directly by the corporation, and in that event the personal account of the owner of the policies shall be charged for specific premiums thus paid on out of such corporate funds on the life of the other." The agreement also fixed the amount of insurance as of the date of its execution and provided that such insurance might be "supplemented by additional policies."

The complaint alleges that decedent died January 18, 1954 and that subsequently plaintiff was appointed as his executrix; that plaintiff's decedent and Candler were the owners of all the stock issued and outstanding by the corporation; that on Gearon's death defendant, under the terms of the December 1952 agreement, still owed him the sum of $7807.15, payable at the rate of $150 per week; that between the date of his death and the filing of the complaint (May 11, 1954) defendant had refused to pay the weekly installments as provided for in the agreement, so that upon the filing of the complaint there was due and owing plaintiff's decedent the unpaid balance of the purchase price of the stock.

319

Defendant's original answer and countercomplaint, as well as its first amended answer and first amended countercomplaint, was ordered stricken on motion of plaintiff, and defendant was granted leave to file a second amended answer and counterclaim with prayer for declaratory judgment. In its second amended answer defendant admitted the execution of the contract of December 19, 1952 and of the Buy and Sell Agreement of 1947, denied that it was indebted to plaintiff, and averred that under articles IV and V of the Buy and Sell Agreement defendant had paid insurance premiums for decedent for the original and additional insurance on the life of decedent so that on December 1, 1952, the date the Buy and Sell Agreement was canceled, decedent owed defendant on account of such payments the sum of $7344.20; that after giving plaintiff all her just credits, defendant owed only the sum of $815.53 which it tendered in court. Defendant also alleged in its answer that plaintiff's decedent, both before and after the execution of the contract of December 19, 1952, stated that he owed defendant company the moneys advanced by it for insurance premiums, as shown in the statement of account as attached in defendant's amended answer.

In its second amended counterclaim defendant, after repeating the foregoing averments of its answer, further alleged that from October 28, 1947 to November 28, 1952 the company had advanced premiums on the life of decedent in the sum of $5595.50 which had been charged "to the personal account of the said Timothy T. Gearon" and carried on the books of defendant in the form of an account receivable from Gearon; that Gearon had failed to repay any of this sum which was still owing; that defendant also advanced premiums on additional insurance in accordance with the provisions of the Buy and Sell Agreement in the amount of $1748.78 which was likewise charged to decedent and was still due and owing. The countercomplaint

alleged the existence of a controversy between the parties within the meaning of the Declaratory Judgments Act (Ill. Rev. Stat. 1953, ch. 110, par. 181.1 (sec. 57½) [Jones Ill. Stats. Ann. 104.057(1)]) and asked the court to declare the rights of the parties, i. e., that defendant upon payment of the sum of $815.53 was entitled to a declaration of rights that it had fulfilled its obligation to plaintiff and was entitled to receive the 499 shares of stock mentioned in the contract, free and clear of any claims. The countercomplaint further prayed that the court set off the sums ` of money due plaintiff under the 1952 contract as installments and find that there were not then any sums of money due plaintiff from defendant; in the alternative the countercomplaint prayed that the court find that the offer by defendant of the sum of $815.53 fully satisfied defendant's indebtedness to plaintiff.

To these amended pleadings plaintiff filed a lengthy motion to strike and a prayer for judgment on the pleadings, which may be summarized as follows: plaintiff alleged that the second amended countercomplaint did not state a cause of action for the following reasons: (1) the cancellation, as of December 1, 1952, of the Buy and Sell Agreement of 1947, annulled all obligations and any set-offs allowable thereunder; (2) the allegations of the countercomplaint attempted to contravene the express provisions of the contract of December 19, 1952; (3) the allegations of fact in the second amended countercomplaint that plaintiff's decedent in his lifetime, both before and after the contract of December 19, 1952, said he owed defendant for insurance premiums advanced should be stricken because they were incapable of proof by reason of the provisions of section 2 of the Evidence Act (Ill. Rev. Stat. 1953, ch. 51, par. 2 [Jones Ill. Stats. Ann. 107.068]); that such evidence, if admissible, would constitute an attempt to vary the terms of a written contract by parol evidence; and (4) the provisions of the Buy and

321

Sell Agreement did not obligate decedent to repay any premiums on insurance advanced by the defendant. After defendant filed its second amended answer and countercomplaint plaintiff had leave to file a supplemental complaint to bring the amount of payments down to date. The court thereupon ordered defendant's second answer and counterclaim stricken, and upon refusal of defendant to plead further and its election to stand on its pleadings, entered judgment against defendant for $7049.75.

The question presented is whether payment made by defendant under the Buy and Sell Agreement of 1947 can be set off against the purchase price of $18,657 provided for in the agreement of December 19, 1952 which expressly canceled the Buy and Sell Agreement. Plaintiff takes the position that the agreement of December 19, 1952, wherein defendant undertook to buy the interest of plaintiff's decedent in the corporation for $18,657, was intended to and did effect a complete settlement of all rights of the parties thereto; that the agreement of 1952, having expressly canceled the Buy and Sell Agreement, the rights of the parties must be determined with reference to the 1952 agreement; that since no reservations, express or implied, were provided for in the 1952 agreement concerning payments made under the Buy and Sell Agreement, no claim therefor can now be asserted without adding to the 1952 agreement terms and provisions wholly inconsistent with the express provisions contained therein; that the construction contended for by plaintiff follows and is consistent with the language of the agreement and does not require reading into it the inconsistent interpretation which would be required to furnish the support necessary to sustain defendant's theory.

██ As of December 1, 1952 defendant had paid premiums on life-insurance policies in the amount of $7344.20, which it now contends are chargeable to plain-

tiff's decedent under the terms of the Buy and Sell Agreement of 1947. This sum of $7344.20, which defendant argues should be set off against the purchase price of $18,657, had been expended by defendant prior to December 1, 1952, the effective date of the agreement of December 19, 1952. Obviously, when the 1952 agreement was entered into, defendant had full knowledge of the payments made by it under the agreement of 1947, yet despite this knowledge it entered into the agreement of 1952 which expressly canceled the agreement of 1947 by mutual consent. The principle is well established that "when an executory agreement partly performed is thus mutually cancelled, if any right is reserved to recover unliquidated damages arising out of a previous breach thereof, it should be reserved expressly, and that the burden is upon one who alleges such a reservation to show that this was the mutual understanding. A mutual rescission, abrogation, release, or cancellation of such a contract, without reservations, terminates it so as to preclude the recovery of damages for any previous breach thereof." Juniper Lumber Co. v. Nelson, 133 Va. 146, 112 S. E. 564, 24 A. L. R. 247, and cases collected in 24 A. L. R. 253. There is pertinent language also in McBee Binder Co. v. Fred J. Robinson Lumber Co., 267 Mich. 637, 255 N. W. 329: "If plaintiff intended to reserve a claim for the balance due it at the time of cancellation, that reservation should have been expressly made. Silence on its part was not sufficient." McCreery v. Day, 119 N. Y. 1, 23 N. E. 198, states the rule succinctly: "Where a contract is rescinded while in course of performance, any claim in respect of performance, or of what has been paid or received thereon, will ordinarily 'be referred to the agreement of rescission, and, in general, no such claim can be made, unless expressly or impliedly reserved upon the rescission.' Leake, Cont. 788, and cases cited." To the same effect are Vider v. Ferguson, 88 Ill. App. 136, Winton v. Spring, 18 Cal. 452; Eames

Vacuum Brake Co. v. Prosser, 157 N. Y. 289, 51 N. E. 986; and Bailey v. Gordon, 8 F.2d 672 (Court of Appeals, Dist. of Columbia). The rule on rescission of contracts as set out in the above citations is reflected in Williston's discussion of the subject in his Contracts, Rev. Ed. 1938, vol. VI, sec. 1827, page 5176. It has been held in Illinois that cancellation of any form of contract necessarily includes a waiver of all rights under it by the parties. Friedman v. City of Chicago, 374 Ill. 545. An examination of the agreement of December 19, 1952 clearly shows that defendant did not expressly or impliedly reserve any right to set off the sum of $7344.20 against the purchase price of $18,657. As we read the agreement, it effected a complete settlement of the rights of the parties thereto, and as heretofore stated, expressly provided that the Buy and Sell Agreement was canceled, effective December 1, 1952.

The 1952 agreement is too lengthy to be set out within the confines of this opinion, but there is nothing ambiguous about its wording, and it shows conclusively that defendant did not expressly or impliedly reserve any right to set off the sum of $7344.20 against the agreed purchase price of $18,657; the specific language of the parties, whereby defendant undertook to purchase decedent's interest in the corporation, completely negates any such obligation.

The provision of the 1947 agreement, upon which defendant relies for its set-off, stated that the premium payments might "be made directly by the corporation, and in that event the personal account of the owner of the policies shall be charged for the specific premiums thus paid on out of such corporate funds on the life of the other." Defendant relies upon this provision to support its contention that the amount of premiums paid by defendant was to be set off against the purchase price stipulated in the 1952 agreement. However, this was no promise made by either Gearon or Candler to reimburse the corporation for any pre-

mium payments made by it, and in fact neither Gearon nor Candler, during the entire period that the Buy and Sell Agreement was in effect, ever paid a premium on the insurance policies of which they were deemed the owners. Obviously neither of them considered it a duty to repay defendant for premiums advanced by it. Gearon and Candler were the sole stockholders, each owning fifty per cent of the stock, and when the corporation made premium payments for them it reduced by that amount the monies available for distribution, as dividends or salary, to Gearon and Candler. In essence, it was nothing more than a bookkeeping device. Defendant would have us construe the words "the personal account of the owner of the policies shall be charged for specific premiums" as a promise to repay, but we think that language was intended to be used only in the settlement of accounts between Gearon and Candler, and this object was effected by the 1952 agreement whereunder Gearon sold his entire interest in the defendant corporation. Defendant argues that it should in any event be given an opportunity to show the amount of premiums paid by the corporation for plaintiff's benefit, and that the cause should be remanded for that purpose, but the 1952 agreement is express in its undertakings, and as a general rule, parol or extrinsic evidence is not permitted to vary, modify or contradict the terms or provisions of a written instrument purporting to be complete on its face. Since the contract of December 19, 1952 professes to be the entire agreement of the parties, parol evidence would not be admissible for purposes of variation. Decatur Lumber & Manufacturing Co. v. Crail, 350 Ill. 319; Armstrong Paint and Varnish Works v. Continental Can Co., 301 Ill. 102; Smith v. Rust, 310 Ill. App. 47. In the Armstrong case the court held that "the contentions of the parties to the contract are not the criterion which should guide the court in determining whether the written contract is a full expression of the agreement of

325

the parties. The court must determine this from the writing itself. If it imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,— it is to be presumed that the parties introduced into it every material item and term, and parol evidence cannot be admitted to add another term to the agreement although the writing contains nothing on the particular term to which the parol evidence is directed."

For the reasons indicated we are of the opinion that the trial judge correctly entered judgment in favor of plaintiff, and the judgment is therefore affirmed.

Judgment affirmed.

BURKE and NIEMEYER, JJ., concur.