618 N.E.2d 487 (1993)
249 Ill. App.3d 173
187 Ill.Dec. 896
In re SALMONELLA LITIGATION.
Marie MOORE, individually and as mother and next friend of Michael Moore, a minor, Plaintiffs-Appellees,
v.
JEWEL COMPANIES, INC., and American Stores Company, Defendants-Appellants.
Nos. 1-89-2247, 1-89-3491, 1-90-0080 and 1-90-0093.
Appellate Court of Illinois, First District, Second Division.
June 15, 1993.
*488 Skadden, Arps, Slate, Meagher & Flom, Chicago (James F. Martin, of counsel) and Reynolds, Beeby & Magnuson, P.C., Detroit, MI (Frank K. Mandlebaum, of counsel), for defendants-appellants.
William J. Harte, Ltd., Chicago (William J. Harte, of counsel), for plaintiffs-appellees.
Presiding Justice McCORMICK delivered the opinion of the court:
In April 1985, Michael Moore, a minor and an employee of Jewel Companies, Inc., contracted salmonellosis from drinking Jewel's milk. Michael's mother, Marie Moore, sued Jewel for sums she spent on medical care for Michael, and she sued as Michael's next friend for his pain, suffering and lost earnings. The Moores did not sue Jewel's parent corporation, American Stores Company, and they opted out of a class action filed against Jewel and American Stores. Jewel settled the Moores' lawsuit, but Jewel claimed a lien on the settlement in the amount Michael received from his insurance, which he obtained as an employee benefit. The Moores petitioned the court to determine Jewel's right to a lien. Jewel appeals from the trial court's holding that it has no lien on the settlement with the Moores, and Jewel and American Stores appeal from the holding that they have no lien on the settlement with plaintiffs in the class action who similarly received insurance benefits because they were defendants' employees.
We affirm because we find that neither the settlement agreements nor the employee benefit plans grant defendants a subrogation lien against the settlements, and defendants are not entitled to a setoff against settlements when the settlement agreements do not expressly provide for setoffs.
Plaintiffs in the class action, like Michael Moore, claim that they contracted salmonellosis from Jewel's milk. Defendants conceded liability in tort in the class action on a theory of strict liability, but the parties proceeded to trial on the class claimants' action for punitive damages based on wilful and wanton misconduct. This court affirmed judgment entered on the jury's verdict for defendants on the charge of wilful and wanton misconduct. In re Salmonella Litigation (1990), 198 Ill.App.3d 809, 144 Ill.Dec. 915, 556 N.E.2d 593.
Defendants and the class plaintiffs then signed the "Salmonella Personal Injury Claims Facility Agreement," which established a method for determining the amount defendants would compensate plaintiffs based on defendants' conceded strict liability in tort. The parties to that agreement "stipulated * * * that the *489 claims of Class Members shall be resolved by settlement or adjudication in the manner * * * hereinafter set forth." Once a claimant qualifies as a "Documented Case," by presenting sufficient evidence of the kinds set forth in the agreement to establish that he suffered salmonellosis due to Jewel's milk, defendants agreed to make a settlement offer based upon the duration of the claimant's illness and the claimant's "economic damages which are recoverable under Illinois law." Defendants agreed to offer claimants who were sick for one or two days $800 plus economic damages, as defendants evaluated those damages, using information received from the claimants. Defendants agreed to offer claimants who were sick three or four days $1000 plus economic damages. Claimants who were ill more than four days need to negotiate their claims individually. Defendants agreed to offer $200 plus economic damages to those claimants who do not have the forms of evidence required to be considered "Documented Cases" under the agreement, but who submit sworn affidavits that they contracted salmonellosis due to Jewel's milk.
Under the agreement, claimants can reject the basic settlement offers and submit counterproposals; if defendants reject a counterproposal, and the parties are not able to reach an agreement through further negotiation, the claim will be set for a hearing pursuant to section 4.05 of the claims facility agreement. The class plaintiffs and defendants agreed that circuit court judges sitting without juries will administer all such hearings. Discovery will be limited to causation and damages, and the hearing will not be subject to the rules of evidence. After the parties present evidence limited to causation and damages, the judge will render an award to compensate the claimant for "monetary damages or other losses incurred" due to Jewel's milk. According to paragraph 4.05(vi) of the agreement, that award "shall be final, and no party shall have the right to appeal."
As part of the agreement, the class members dismissed their claims against defendants "with prejudice, subject to the terms of this Agreement." Although several members of the class were defendants' employees who had received some compensation from health and disability insurance for their injuries, the claims facility agreement did not include any provision concerning those sums.
The Moores, as opt-out plaintiffs, negotiated separately with Jewel. During those negotiations, Jewel argued that it was entitled to a lien or setoff of $522 against any amount the Moores recovered from them because Michael Moore had received a total of $522 from health insurance under the American Stores Health Care Plan and wage loss insurance under the American Stores Disability Pay Plan, which he obtained as employee benefits. The Moores petitioned the court for a determination of Jewel's right to a lien. The parties agreed to settle the case for $9,500, with the lien to be adjudicated by the trial court. Thus, the Moores would recover a total of $10,022 if the trial court decided in their favor, since they would not need to refund the amount they received from insurance. If the trial court decided that Jewel was entitled to a lien, the Moores would need to refund to Jewel the $522 they received from insurance, so their total recovery would be $9,500.
The trial court found that its decision on the lien claimed against the Moores' settlement could affect all of the parties who were defendants' employees and who therefore had insurance which covered part of their losses due to salmonellosis. Several such persons were parties to the class action. The trial court continued the hearing on the lien against the Moores to give all affected claimants notice of the issue to be decided and an opportunity to be heard.
The parties presented to the trial court copies of the health care plan and the disability plan applicable to all of defendants' employees who obtained coverage as employee benefits. The health plan states:
"When a Plan Member accepts payment of benefits under this Plan, * * * the Member is deemed to have assigned to the Plan his or her right to receive * * * compensation from any other person *490 or plan for that same medical * * * care. Pursuant to such assignment, the Plan may request that any such payments from third parties be paid * * * directly to the Plan."
The disability plan similarly provides:
"Whenever any payment is made by this Plan for an illness or injury for which the Member has a right of recovery from any other person, organization * * * or plan, American Stores will maintain rights of recovery against such third party."
In a written order dated July 19, 1989, the trial court stated:
"This is not a motion to be decided on the basis of collateral source princip[le]s, nor is it a common law subrogation case. This is a contract case. This motion does not involve a payment required by a judgment entered against Jewel. It involves a settlement agreement negotiated by Jewel and the claimants-plaintiffs.
The right of Jewel to a subrogation lien or to a setoff against settlement proceeds is to be determined by the provisions of Jewel's contract with or on behalf of the claimants-plaintiffs. Where the right of an insurer to subrogation is expressly provided for in the policy as here, its rights must be measured by and depend solely on the terms of such provisions.
* * * * * *
* * * Jewel knew the provisions of the Plan at the time that it entered into these settlement agreements. * * *
Only when the Plan has paid for an illness or injury for which a member has a right of recovery from any other person, organization, insurance company or plan, is there a right of recovery, and then only against such third-party. This provision is contained in the Plan agreement. It is clearly and unambiguously not applicable to payments made to the member by Jewel. Jewel is not a third-party or other entity. Even if there were an ambiguity, it would be construed against Jewel, resulting in the same conclusion."
The trial court held that Jewel was not entitled to a lien or setoff against the Moores' recovery. The trial court also held that the decision bound all claims by the persons notified of the hearing who were covered by defendants' health care or disability plans.
Defendants filed a notice of appeal from the ruling, and that appeal is docket no. 1-89-2247. Defendants recognized that the order dated July 19, 1989, expressly determined defendants' right to a lien for a number of claims, including claims of some participants in the class action, for which the trial court had not entered a final order. Defendants moved for an order allowing an interlocutory appeal by permission pursuant to Supreme Court Rule 308(a), which permits appeals from interlocutory orders when the trial court identifies a substantial question of law for which an immediate appellate determination "may materially advance the ultimate termination of the litigation." 134 Ill.2d R. 308(a).
Defendants later moved for a finding pursuant to Supreme Court Rule 304(a) (134 Ill.2d R. 304(a)), that there was no just reason to delay enforcement or appeal of the July 19 order. The trial court granted the motion and defendants filed an appropriate notice of appeal based on that finding. Defendants' appeal pursuant to Rule 304 is docket no. 1-90-0093.
The class claimants filed a petition for declaration of violation of the claims facility agreement, arguing that by seeking to appeal from the July 19 order insofar as it applied to class claimants, defendants violated paragraph 4.05(vi) of the agreement. In an order dated December 8, 1989, the trial court denied the class claimants' petition. The class claimants moved for an order stating that there was no just reason to delay appeal from the part of the December 8 order which denied their petition. On January 5, 1990, the trial court granted the class claimants' motion, expressly finding no just reason to delay appeal. The class claimants then filed their notice of appeal from the portion of the December 8 order which denied their petition for a declaration *491 that defendants violated the agreement. That appeal is docket no. 1-90-0080.
In the December 8 order, the trial court also granted defendants' motion for an order allowing interlocutory appeal under Supreme Court Rule 308(a), and the trial court stated the question for appellate review:
"The question involved in the Order dated July 19, 1989 is whether Defendant, Jewel Companies, Inc., is entitled to a lien or set off against claims asserted against it by its employees equal to the amount of money paid to those claimants pursuant to the American Stores Health Plan and the American Stores Disability Pay Plan."
Defendants applied for leave to appeal and that appeal is docket no. 1-89-3491. This court consolidated docket nos. 1-89-2247, 1-89-3491, 1-90-0080 and 1-90-0093 for appeal.

I.
The Moores, without explanation, assert in their brief that this court does not have jurisdiction under Supreme Court Rule 301 (134 Ill.2d R. 301) to decide the appeal in docket no. 1-89-2247. As Jewel points out in its reply brief, the trial court's decision resolved the only issue presented to the court in the Moores' case. All that remains is enforcement of the judgment, to require Jewel to pay the Moores the final $522 it withheld from the settlement funds based on its claimed lien. This court has jurisdiction to decide the Moores' case under Supreme Court Rule 301. See In re Marriage of Spizzo (1988), 168 Ill.App.3d 487, 492, 119 Ill.Dec. 146, 522 N.E.2d 808.
The class claimants and the Moores concede that, under Supreme Court Rule 308(a), this court has jurisdiction to decide defendants' appeal from the order dated July 19, 1989. Since the trial court properly stated a question for which appellate review apparently will materially advance termination of the litigation, the concession is appropriate. Since this court has jurisdiction to decide the issues contested between all parties under Rule 308, we need not determine whether this court also has jurisdiction to decide the same issues under Supreme Court Rule 304. Defendants' appeal under Rule 304, docket no. 1-90-0093, is therefore dismissed as moot.
The parties agree that this court has jurisdiction under rule 304 to consider the class claimants' appeal from the order denying their petition for declaration of a violation of the claims facility agreement. The trial court included appropriate language in the order to make it appealable. Since the petition states a claim for relief entirely separate from the claims in their complaint, and since the trial court's order of December 8 is a final adjudication of the claim in the petition, we find that we have jurisdiction under Rule 304 to hear the appeal in docket no. 1-90-0080. See Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co. (1990), 197 Ill.App.3d 948, 951-52, 145 Ill.Dec. 476, 557 N.E.2d 246.

II.
The class claimants, in their appeal, ask this court to reverse the trial court's order dismissing their petition for declaration of violation of the claims facility agreement. Paragraph 4.05(vi) of the agreement provides that "[t]he award of the Judge shall be final, and no party shall have the right to appeal," and defendants have appealed. The class claimants also ask this court to dismiss defendants' appeal from the order dated July 19, 1989, insofar as it pertains to class claimants, because of the same clause of the agreement.
Defendants answer that the order dated July 19, 1989, is not an "award of the Judge" within the meaning of paragraph 4.05(vi) of the claims facility agreement. The claims facility agreement, like other settlement agreements, is a contract and contract law governs its interpretation. People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association (1982), 108 Ill.App.3d 266, 63 Ill.Dec. 910, 438 N.E.2d 1273.
"The primary objective in construing a contract is to give effect to the parties' intent, and to discover this intent the *492 various contract provisions must be viewed as a whole. [Citation.] Words derive meaning from the context in which they are used, and contracts must be viewed as a whole by examining each part in light of the other parts." Robert S. Pinzur, Ltd. v. The Hartford (1987), 158 Ill.App.3d 871, 876, 110 Ill.Dec. 961, 511 N.E.2d 1281.
Paragraph 4.05 of the claims facility agreement sets out procedures for hearing a dispute over the amount a class claimant should receive under the provisions of the claims facility agreement. In this context, the parties agreed that they would not appeal a judge's award. The trial court, by rejecting the petition for declaration of violation of the agreement, effectively held that the parties intended to waive the right of appeal only from final determinations in hearings pursuant to the agreement concerning an individual class member's claim. The trial court did not in this case hear any individual class member's claim, and the proceedings were not held pursuant to paragraph 4.05 of the claims facility agreement. The trial court considered the specific facts pertinent only to the Moores' claim, and the Moores had opted out of the class, so their recovery was not governed by the claims facility agreement. Therefore, the trial court found that paragraph 4.05(vi) of the agreement did not apply to the proceedings.
The class claimants argue that the trial court's decision is contrary to the spirit of the agreement because the parties intended the judges at hearings to make rulings on a number of pretrial and trial issues, and the parties must have intended that they were not to appeal from such rulings. The pre-trial orders and rulings on discovery, and all other orders prior to the final award on an individual class member's claim, would not normally be appealable since they would not be final judgments. (See 134 Ill.2d R. 301.) In the absence of special language in pretrial orders to bring them within Supreme Court Rules 302-08 (134 Ill.2d Rules 302-08), neither party could appeal from such rulings even though the parties did not waive their right to appeal in the agreement. See People ex rel. Scott v. Silverstein (1981), 87 Ill.2d 167, 57 Ill. Dec. 585, 429 N.E.2d 483.
The trial court interpreted paragraph 4.05(vi) to apply only to final awards on individual class members' claims. Under this interpretation, if a hearing judge finds that an issue arising on a claim before the court requires appellate review under Rule 308 and the judge includes appropriate language in an order deciding the issue, the parties could file petitions for leave to appeal and this court would have discretion to decide whether to exercise jurisdiction to review the certified question on its merits. If this court agrees with the hearing judge that the question merits immediate appellate review, the parties could appeal; under the trial court's interpretation of the agreement, the parties have not waived the right to such review. The trial court's ruling allows appellate review only where the trial court and the appellate court agree that the pretrial issue is of such importance that immediate appellate review is appropriate.
The decision to permit such limited interlocutory review is not contrary to either the language or the spirit of the claims facility agreement. The parties waived the right to appeal only from final determinations of individual class members' claims. Since the order of July 19, 1989, was not a final award in a hearing concerning any class claimant's recovery, defendants have not waived the right to interlocutory appeal from that order, even insofar as it pertains to class claimants. We affirm the trial court's denial of the petition to declare the filing of the notice of appeal a violation of the claims facility agreement.

III.
Defendants, in both docket nos. 1-89-2247 and 1-89-3491, contend that they were entitled to subrogation or a setoff, either under the common law or under the express language of the insurance contracts. On appeal, as in the trial court, defendants rely primarily on numerous cases stating the basic principle that "[a]n injured person is entitled to one full compensation for his injuries, and a double *493 recovery for the same injury is against public policy." (Eberle v. Brenner (1987), 153 Ill.App.3d 700, 702, 106 Ill.Dec. 144, 505 N.E.2d 691.) Our supreme court has stated that "[t]he purpose of compensatory tort damages is to compensate the plaintiff for his injuries, not to punish defendants or bestow a windfall upon plaintiffs." Wilson v. Hoffman Group, Inc. (1989), 131 Ill.2d 308, 321, 137 Ill.Dec. 579, 546 N.E.2d 524.
Illinois cases have applied this principle in a number of cases involving settlements. (E.g., Wilson, 131 Ill.2d 308; Dial v. City of O'Fallon (1980), 81 Ill.2d 548, 44 Ill.Dec. 248, 411 N.E.2d 217; Brown v. Timpte Inc. (1985), 137 Ill.App.3d 1053, 92 Ill.Dec. 677, 485 N.E.2d 488.) In Wilson, the plaintiff sued a defendant who in turn sued a third-party defendant, and plaintiff settled with the third-party defendant. Plaintiff proceeded to trial against the defendant and the court awarded plaintiff tort damages. Our supreme court held that, in view of the policy of protecting non-settling defendants from disproportionate damages, the amount of plaintiff's settlement with the third-party defendant had to be deducted from the tort damages awarded against the non-settling defendant. Similarly, in Brown, the court found that amounts one defendant paid in settlement could be applied to reduce the plaintiff's recovery in tort against a non-settling defendant.
In Dial, the plaintiff sued the defendant for both negligence and trespass and settled the negligence count. The court tried the trespass count and awarded the plaintiff tort damages. Our supreme court affirmed the award, but held that the award had to be reduced by the amount of the settlement on the negligence count.
In all three cases the courts tried tort claims and awarded tort damages against the defendants, with the damages measured to fully compensate the plaintiffs for their injuries. The courts then reduced the full measure of damages by the amounts the plaintiffs had already recovered.
Defendants cite no case in which courts have used the double recovery doctrine to reduce a settlement amount. The doctrine should not apply to settlements because a settlement is a contract which governs the plaintiff's recovery. (See Pierce v. MacNeal Memorial Hospital Association (1977), 46 Ill.App.3d 42, 49-50, 4 Ill.Dec. 615, 360 N.E.2d 551.) Neither in the Moores' case nor in the class claimants' case against defendants will the courts ever attempt to assess the damages necessary to fully compensate the claimants for their injuries. Instead, the courts will only enforce the Moores' settlement agreement and the claims facility agreement, determining the amount of recovery permitted the Moores and class claimants under their agreements. As the trial court stated:
"This is a contract case. This motion does not involve a payment required by a judgment entered against Jewel. It involves a settlement agreement negotiated by Jewel and the claimants-plaintiffs."
The courts are not in a position to determine whether the agreed settlement amount for the Moores, or the agreed measure of compensation for class claimants, will fully compensate those claimants for their injuries. The court hearing the class members' claims can decide only what amounts defendants owe the claimants under the agreement. Without a determination following full litigation of a tort case of the amount necessary to fully compensate claimants for their injuries, this court cannot say that any amount constitutes a double recovery. (Cf. Wilson, 131 Ill.2d 308.) Thus, the trial court correctly limited its decision to determination of the amount that defendants had agreed to pay claimants.
The settlement agreement with the Moores makes no reference to the $522 the Moores received from insurance. The claims facility agreement similarly makes no reference to funds claimants received from insurance, even for those claimants who, as defendants' employees, had insurance as an employee benefit. Since the settlement agreements made no reference to the insurance, the trial court looked instead to the insurance contracts.

*494 A.
Defendants contend that both insurance plans expressly establish defendants' right to subrogation liens against plaintiffs here. This court has frequently restated the basic principles governing construction of insurance contracts.
"The general rules of construction which apply to other contracts equally apply to insurance contracts. [Citation.] Where the language of the policy is clear and unambiguous, it must be given its plain, ordinary and popular meaning. [Citation.] However, the question of whether a policy is ambiguous is a matter of law, in which the court examines the language at issue in light of the policy as a whole. [Citation.] In making its determination the court must construe the policy in its entirety, giving effect to every part of the policy as is possible, including endorsements." Management Support Associates v. Union Indemnity Insurance Co. (1984), 129 Ill.App.3d 1089, 1092-93, 85 Ill.Dec. 37, 473 N.E.2d 405.
The health and disability plans provide that the member assigns to the plans his right to recover from any "other person" for costs covered by the plans. The plans establish the plan's right to recover directly from such "third parties." Defendants argue that they are "other person[s]" and "third part[ies]" because they were not parties to "the transaction wherein the Plan makes a benefit payment to a plan member." Defendants expressly argue that they cannot be identified with "the Plan" within the meaning of the health plan or the disability plan. If their construction is right, defendants do not appear to have any grounds for asserting subrogation rights based on payments under either plan. The health plan provides that a plan member "is deemed to have assigned to the Plan his or her right to receive * * * compensation" (emphasis added), thereby limiting the subrogation right to the very plan with which defendants have asked us not to identify them.
Moreover, "the doctrine of subrogation applies only when one * * * pays a debt for which another is primarily liable." (Emphasis added.) (In re Estate of Hammond (1986), 141 Ill.App.3d 963, 967, 96 Ill.Dec. 270, 491 N.E.2d 84.) A party who is not a source of payments cannot claim a subrogation right for those payments. If defendants cannot be identified with "the Plan" within the meaning of the health plan or the disability plan, they cannot claim a subrogation right based on payments made by those plans.
While defendants' construction of the insurance contracts does not appear to help their claim, that construction also appears to be wrong. In both the health plan and the disability plan, subrogation rights are limited to rights against third parties. In the context of each plan, "third party" refers to any person or corporation not a party to that plan. Defendants concede that they are parties to each plan. Defendants ask this court to construe the insurance so that they are parties to the contracts, and entitled to the subrogation rights specified therein, while remaining third parties in the meaning of the subrogation clauses, so that they can also be parties against whom the subrogation rights may be asserted. We reject this internally inconsistent construction of the subrogation clauses in both plans.
Defendants argue that the plan summaries support its interpretation of the plans. The health plan provides:
"The Plan Document plus indicated Appendices constitute the entire Plan. * * *
* * * * * *
* * * SUMMARY PLAN DESCRIPTION (SPD)
Each Plan Member will be issued a summary pamphlet that * * * summarizes the provisions of the Plan. This SPD is only a summary of the Plan document itself. If there are any discrepancies between the SPD and the Plan document, the Plan document will control."
The SPD is not included in the appendices to the plan document.
*495 The disability plan makes no explicit reference to the pamphlet containing a summary of the plan; however, the plan states:
"The Plan as stated herein and any Amendments or Appendices to this Plan constitute the entire Plan. The provisions contained herein shall prevail over any other statement in matters of interpreting the Plan."
The summary itself states:
"This booklet describes the principal features of the Plan, and also provides a non-technical summary * * *. The complete terms of the Plan are set forth in the Plan document * * *.
* * * * * *
* * * [T]he terms of the Plan will govern in all cases."
Thus, both plans and both summaries provide that the summaries cannot enlarge, restrict, or in any way alter the terms of the plans. Since the plans expressly provide that their terms are not to be affected by the summaries, we find that the summaries cannot affect our interpretation of the plans. (See Golen v. Chamberlain Manufacturing Corp. (1985), 139 Ill. App.3d 53, 59, 93 Ill.Dec. 677, 487 N.E.2d 121) (extrinsic documents are not part of contract unless contract shows parties intended to make document part of contract). Since neither plan establishes defendants' right to subrogation liens on amounts plan members recover in claims against defendants, the trial court correctly denied defendants' claim for liens against plaintiffs in this case.

B.
Finally, defendants argue that they are entitled to setoffs for the amount of insurance payments class claimants and the Moores received, or for that amount minus the amount of the employees' contributions to those plans. Defendants rely principally on Poltrock v. Chicago & North Western Transportation Co. (1986), 151 Ill.App.3d 250, 104 Ill.Dec. 540, 502 N.E.2d 1200. The plaintiff in that case, as in defendants' other cases, went to trial on a tort cause of action and recovered a judgment for tort damages, intended to measure full compensation for the plaintiff's injuries. Defendants cite no case in which a defendant was entitled to a setoff against a settlement when the settlement agreement did not provide for a set off. At most, Poltrock establishes that if the Moores' and the class claimants' claims were tried and they recovered judgments for full tort damages against defendants, defendants would be entitled to set off against those judgments the amounts the claimants received from insurance. Poltrock has no application where, as here, the parties settled the tort causes of action.
This court applies principles of contract law to settlement agreements such as the claims facility agreement and the settlement with the Moores. (See Colorado City Lot, 108 Ill.App.3d 266.) In Gearon v. Airways Fireproofing System, Inc. (1956), 8 Ill.App.2d 317, 132 N.E.2d 62, the defendant corporation in 1947 agreed to purchase life insurance for its two principal stockholders, and the stockholders agreed to accept the life insurance proceeds as full payment for their equity in the corporation. In 1952 one stockholder agreed to sell his stock to defendant for a specified sum to be paid in weekly installments for a period of years. When the stockholder died the corporation stopped making payments and the estate sued for the balance still owing. The defendant contended that it was entitled to a setoff against the balance in the amount of life insurance premiums paid under the 1947 agreement. The trial court disallowed the setoff and the appellate court affirmed:
"Obviously, when the 1952 agreement was entered into, defendant had full knowledge of the payments made by it under the agreement of 1947 * * *. `If [defendant] intended to reserve a claim for the balance due * * *, that reservation should have been expressly made. Silence on its part was not sufficient.' * * * [D]efendant did not expressly or impliedly reserve any right to set off the [premiums] against the purchase price * * *. As we read the agreement, it effected a complete settlement of the rights of the parties thereto." Gearon, 8 Ill.App.2d at 323-24, quoting McBee *496 Binder Co. v. Fred J. Robinson Lumber Co. (1934), 267 Mich. 637, 255 N.W. 329.
Similarly, when defendants here signed agreements with class claimants and the Moores, they knew of the payments plaintiffs received from insurance they obtained as employee benefits. The agreements made no reference to the funds plaintiffs received from insurance. The silence of the settlement agreements was insufficient to reserve defendants' claim for setoff.
Defendants in effect ask this court to regard the class action as a case that is not yet settled, for which the class claimants will recover their full tort damages rather than a compromise amount. The claims facility agreement establishes a formula for determining only defendants' initial offer to each claimant; each claimant has the right, expressly reserved by the agreement, to reject the offer, and if defendants reject the claimant's counterproposal, the matter proceeds to a hearing before a circuit court judge.
Class action settlement agreements often establish only a method for determining a class member's recovery rather than expressly setting forth the amount to be distributed to each member of the class. (See, e.g., Air Line Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc. (7th Cir.1985), 763 F.2d 875.) All class members agreed, in the claims facility agreement, to dismiss their tort claims against defendants with prejudice. Their claims in tort have been replaced by their claims under the claims facility agreement. The class claimants accept their documented economic damages plus $800 or $1,000 as the basic measure for their recoveries. The agreement does not preserve the claimants' rights to recover for pain and suffering or other non-economic damages. The claimants waived their rights to have juries decide the proper measure of damages, and if the trial court, after hearing, gives a claimant less than the basic settlement offer, the claimant has no recourse because he has waived his right to appeal. In exchange for the simplified recovery procedures provided under the claims facility agreement, the claimants have given up substantial rights, including the right to recovery of full non-economic damages available in tort.
Therefore, the claims facility agreement is a settlement contract, and both parties should be required to do that which they agreed to do. If a defendant agrees to settle a case for twice a plaintiff's actual damages, the courts will not interfere; the doctrine of discouraging double recovery does not apply to reduce agreed settlements. Here, defendants agreed to settle the case without referring to the amounts claimants received from insurance, so the settlement agreement does not provide for a setoff or for a right to subrogation. Neither do the insurance plans establish defendants' right to subrogation against itself.
For the reasons stated above, we affirm the judgment denying Jewel's claim for a subrogation lien or a setoff against the Moores in docket no. 89-2247. For the class action suit and all other related lawsuits, we answer the certified question of docket no. 1-89-3491 in the negative: Defendants are not entitled to a lien or setoff against the claims asserted against it by its employees. We dismiss docket no. 1-90-0093 as moot in light of the resolution of the certified question. In docket no. 1-90-0080, we affirm the trial court's order denying class claimants' petition for declaration of violation of the claims facility agreement.
No. 89-2247, Affirmed.
No. 89-3491, Affirmed.
No. 90-0080, Affirmed.
No. 90-0093, Appeal dismissed.
DiVITO and CERDA, JJ., concur.